(120 So. 593)

No. 29606.

STATE ex rel. SAINT, Atty. Gen., et al. v. DOWLING.

Nov. 26, 1928.

On Application for Rehearing, Jan. 28, 1929.

Janvier, Bond, Curtis, Hall & Foster, of New Orleans (Frank J. Looney, of Shreveport, of counsel), for appellant.

W. J. O'Hara and Edward Rightor, Sp. Asst. Attys. Gen., for appellee.

Percy Saint, Atty. Gen., for the State.

O'NIELL, C. J. This is a suit to oust Dr. Oscar Dowling from the office of president of the state board of health, and to declare Dr. Joseph A. O'Hara entitled to the office. The plaintiffs are the state of Louisiana, on the relation of the Attorney General, and Dr. O'Hara, who was appointed president of the state board of health and commissioned for the term of four years, under authority of the Act 126 of 1928, p. 156. Dr. Dowling was appointed under authority of section 2 of the Act 79 of 1921, p. 108, for the term of seven years, commencing on the 30th of August, 1925, and he pleads that the Act 126 of 1928, which purports to repeal and supersede section 2 of the Act 79 of 1921, is unconstitutional. The civil district court decided in favor of Dr. O'Hara. Dr. Dowling has appealed from the decision.

The only question to be decided is whether the Act 126 of 1928 is valid legislation or unconstitutional. If it is valid, so far as it supersedes the second section of the Act 79 of 1921, Dr. Dowling is removed from office.

If the new statute is unconstitutional in that respect, the act of 1921 is yet in force, and Dr. Dowling is entitled to remain in office until the end of the term of seven years for which he was appointed, and which will expire on the 29th of August, 1932.

The state board of health is provided for in the eleventh section of article 6 of the Constitution, viz.:

"The Legislature shall create for the state and for each parish and municipality therein boards of health, and shall define their duties and prescribe their powers. The parish and municipal boards of health shall be subordinate to the state board of health. The state board of health shall be composed of a president, who shall be designated as state health officer, and eight members, one from each congressional district, as at present constituted; five of which members shall be duly qualified and registered physicians; and the three others shall have such qualifications as shall be prescribed by the Legislature. The Governor shall, by and with the advice and consent of the Senate, appoint the president and members of the state board of health."

The first ground on which the appellant contends that the Act 126 of 1928 is unconstitutional is that the statute—according to his contention—has more than one object, and is therefore violative of the sixteenth section of article 3 of the Constitution, which declares:

"Every law enacted by the Legislature shall embrace but one object, and shall have a title indicative of such object."

The title of the Act 126 of 1928 is as follows:

### "An Act

"Providing how the state board of health shall be composed; providing for the payment of funds and revenues collected by, or for the use of and expenditure by said board to be paid into the treasury of the state and thereafter to be appropriated by the Legislature according to law; prescribing the qualifica-

tions of the members of the said state board of health; providing for the appointment of such members, their terms of office; repealing section 2 of Act No. 79 of 1921 and providing that this act shall supersede the provisions of all laws inconsistent herewith; and providing that the unconstitutionality of any provisions of this act shall not affect or impair any other part thereof.".

The first section of the act declares merely that the state board of health shall be composed of a president and eight members, one from each congressional district, and that the board shall be officially known as the Louisiana state board of health and shall have its domicile in New Orleans.

The second section declares that all fees, taxes, licenses and other funds and revenues collected by or for account or for the support of the state board of health, or to be used in any of its work, or heretofore paid to said board for any purpose, shall be paid by the party, concern, officer, board or commission collecting the same into the state treasury, and shall hereafter be appropriated by the Legislature according to law.

The third section prescribes the qualifications of the members of the board and provides that they shall be appointed by the Governor for terms of four years, except that, as to the first board, the terms of two members shall expire on the 29th of July, 1929, the terms of three shall expire on the 29th of July, 1930, and the terms of three shall expire on the 29th of July, 1931, and that the term of the president of the board shall begin on the 15th of August, 1928, and expire on the 15th of August, 1932.

The fourth section of the act declares that section 1 and sections 3 to 18, inclusive, of the Act 79 of 1921 shall not be affected, but that section 2 of the Act 79 of 1921 shall be repealed, by this act, 126 of 1928, and that all provisions of other laws inconsistent with this act shall be superseded by its provisions.

The fifth and last section of the act declares that, if any of the provisions of the act be unconstitutional, the unconstitutionality shall not impair or affect any other of its provisions.

Appellant's argument, stated specifically, is that the Act 126 of 1928 has two distinct and well-defined objects, both as indicated in its title and as expressed in its text, viz.:

First. To provide for the composition or membership of the state board of health and the appointment of its members, and to prescribe their qualifications and fix their terms of office.

Second. To require that all of the funds and revenues collected by or for account of the state board of health, shall be paid into the state treasury, and thereby to increase the general revenues of the state.

It is argued that these two objects—the one to provide for the membership of the state board of health and the other to require its revenues to be paid into the state treasury—are not cognate or germane to each other, and that the statute has not, either as indicated in its title or expressed in its text, one main object, of which the two objects mentioned might be regarded as mere incidents, or means to an end.

A sufficient answer to the argument is that the so-called *two objects*—the one to provide for the membership of the state board of health, and the other to require its funds to be paid into the state treasury—deal with the same subject-matter, namely, the state board of health, and are therefore, and to that extent, cognate objects. It is conceded in appellant's brief that the so-called *two objects*, which this statute is said to have, could be included in one statute, without violating the sixteenth section of article 3 of the Constitution, if the two objects were mere incidents or subdivisions of one main object—as, for example, if the title were "An act relative to the state board of health," or "An act

to prescribe the powers, duties and functions of the state board of health," or "An act to carry into effect section 11 of article VI of the Constitution." As a matter of fact, although the title of this act is not couched in that language, the object of the act is relative to the state board of health, and is to carry into effect the provisions of section 11 of article 6 of the Constitution—as far as the new statute goes; and the title of the statute is "indicative of such object." It is true that the title of this statute is not as artistically worded as it would be if its author had stated the one main object of the act, instead of stating merely the several means of accomplishing that object; but all that the Constitution requires in that respect is that the statute shall embrace but one object and have a title indicative of that object. The Constitution of 1913, and 1898 in article 31, and 1879 in article 29, required that the one object of a statute should "be expressed in its title." The requirement of the new Constitution, that the title of a statute shall be *indicative* of its object, was intended, manifestly, to be a modification of the requirement of the previous Constitutions, that the object of a statute should be *expressed* in its title. The manifest purpose of the modification was to give assurance that there was no necessity of expressing in detail, or even in substance in the title of a statute, all of the provisions contained in its text. The title of this statute does, unnecessarily, go into detail in expressing the object of the statute; but the title is nevertheless *indicative* of the object of the law.

■ It is argued on behalf of the appellant that the Act 126 of 1928 shows upon its face that it has not the one main object of dealing with the state board of health in a general way, because the statute does not purport to prescribe the duties or powers of the board, or provide for any of its functions, but merely accomplishes the two avowed ob-jects, namely, to deprive the board of its revenues and to get rid of Dr. Dowling. Whether that was or was not the motive of the Legislature in enacting this law is a matter which we have no authority over. The Legislature is supreme in its law-making power, so long as it keeps within the restrictions imposed upon it by the Constitution.

■ Appellant's second contention is that there is no indication in the title of the Act 126 of 1928 of the intention—or object—of providing for the appointment and fixing the term of office of the president of the state board of health. They are the provisions in the new statute which Dr. Dowling is most concerned with. The argument, specifically, is that the president of the state board of health is not a member of the board, and, therefore, that the clauses in the title of the act, "providing how the state board of health shall be composed; * * * prescribing the qualifications of the members of the said state board of health; providing for the appointment of such members, their terms of office," etc., are not indicative of an intention—or the object—of providing for the appointment and fixing the term of office of the president of the state board of health. The answer to the argument is that the president of the state board of health is a member of the board, for the Constitution itself declares that "the state board of health shall be composed of a president, who shall be designated as state health officer, and eight members, one from each congressional district as at present constituted." It would be more accurate perhaps to say that the board is composed of a president and eight *other* members; but the idea that was intended to be conveyed was that the board should be composed of the president and one member from each of the eight congressional districts. It is not unusual, in addressing the president and other members of a political board, to refer to them as the president and members, in-

stead of the president and *other* members. Be that as it may, when the Constitution declares that the state board of health shall be *composed of* a president and eight members, it makes the president one of the component members of the board; and when the title of the statute, enacted pursuant to that provision of the Constitution, declares that the object of the statute is to provide how the board shall be composed and provide for the appointment of its members, their terms of office, etc., it is a sufficient indication of the object of providing for the appointment of the president, as well as of the other members of the board.

The third contention of the appellant is that the Act 126 of 1928 violates the seventeenth section of article 3 of the Constitution, and violates again the sixteenth section, by attempting to revive section 1 and sections 3 to 18 of the Act 79 of 1921, and to repeal the Act 296 of 1926, which latter act repealed and superseded sections 3, 4, 5, 11 and 13 of the Act 79 of 1921. The seventeenth section of article 3 of the Constitution declares that the only way to revive or amend a law is to re-enact and publish it at length, and that no law shall be revived or amended by reference to its title. The Act 126 of 1928 does not purport to *revive* section 1 and sections 3 to 18 of the Act 79 of 1921, but merely declares, in the fourth section, that section 1 and sections 3 to 18, inclusive, of the Act 79 of 1921 *shall not be affected* by the act of 1928. It is very likely that the Legislature overlooked the fact that sections 3, 4, 5, 11 and 13 of the Act 79 of 1921 had been repealed by the Act 296 of 1926 when the act of 1928 was adopted; otherwise the Legislature would not have referred to those sections of the act of 1921 as being unaffected by the act of 1928. It is said that the Act 126 of 1928 has gutted the law on the subject of the state board of health, by repealing the Act 296 of 1926 and attempting to revive the repealed sections of

the Act 79 of 1921. For the purpose of deciding this case, we are not concerned with the question whether the Act 296 of 1926 has been repealed by the Act 126 of 1928; for the act of 1926 had no reference to the appointment or term of office of the president of the state board of health, but merely amended and re-enacted—and thereby repealed—sections 3, 4, 5, 11 and 13 of the Act 79 of 1921, which sections had no reference to the appointment or term of office of the president of the state board of health.

The fourth complaint of the appellant is that, if the Act 126 of 1928 is not null, it has nullified the inspection statutes, particularly Act 199 of 1918, providing for "coal oil inspections," Act 201 of 1924, providing for "bottling works inspections,". and Act 228 of 1926, levying a tax on kerosene, and has thereby put an end to the functions of the state board of health. The second section of the Act 126 of 1928, as we have said, requires all of the funds and revenues of the state board of health, to be paid into the state treasury. The revenues or fees which are authorized to be collected under the inspection statutes which we have mentioned are levied, not under the taxing power, but under the police power, and are supposed to cover only the costs of the inspections, and to be appropriated and devoted to that purpose. It is contended, therefore, that if these revenues or fees are turned into the state treasury, subject to the general appropriations made by the Legislature, there will be no authority for collecting them under the police power, and that, as the fees are collectible only when the inspections are made, if no inspections are made no fees can be collected. These objections have reference not to the question of constitutionality, but to the question of wisdom or policy of the Act of 1928— a question for the Legislature and not for the courts to consider.

Appellant's fifth contention is that

the Act 126 of 1928 is violative of article 9 of the Constitution, in that the purpose and effect of the statute is to remove Dr. Dowling from office by a method other than the methods prescribed in that article of the Constitution. The argument is founded upon the doctrine stated in State v. Bain, 137 La. 308, 68 So. 621, and repeated in State v. Dunson, 138 La. 131, 70 So. 61, that, when the Constitution prescribes a method of removal from office, that method is exclusive, and a statute prescribing any other method is unconstitutional. The Act 126 of 1928, however, did not remove Dr. Dowling from office for any cause relating to him, but merely shortened the term of office. It is argued that the office of president of the state board of health is a constitutional office, and, therefore, that the term of the office cannot be shortened by an act of the Legislature, to the prejudice of an incumbent in office at the time of the passage of the act. The office of president of the state board of health is a constitutional office in the sense only that the Constitution commands the Legislature to create the office; but, inasmuch as the Constitution did not fix the term of office, and impliedly left that authority with the Legislature, the term of office is subject to change at any session of the Legislature. There is a provision in the Constitution, section 40 of article 7, which forbids the Legislature to curtail the term of office or salary of any judge in office, and declares that any legislation so affecting a judicial office shall have effect only at the end of the term of the incumbent in office at the time of the passage of the act. If the writers of the Constitution had intended to impose the same restriction upon legislation affecting the terms of office or salaries of other officers, they would not have confined the restriction to legislation affecting the terms of office and salaries of judges. In fact, no such restraint would have been imposed upon legislation affecting the terms of office or salaries of judges, if the restraint went without saying as to public officers generally.

In support of the argument that the Act 126 of 1928 violates article 9 of the Constitution appellant cites four cases, namely, State ex rel. Holmes v. Wiltz, 11 La. Ann. 439, State ex rel. Downes v. Towne, 21 La. Ann. 490, State v. Bain, 137 La. 308, 68 So. 621, and State v. Dunson, 138 La. 131, 70 So. 61; but we do not find the rulings in these cases appropriate to the question presented here. In State ex rel. Holmes v. Wiltz, it is true, the court said that a person holding an existing office, under a fixed tenure, could not be removed, or his regular term of service abridged, by an ordinary act of legislation other than an act abolishing the office. But the only question which the court had in mind, or was called upon to decide, or did decide, was whether an act of the Legislature, entitled "Act creating a recorder of mortgages for the parish of Orleans," approved March 14, 1855, p. 321, had repealed the original act creating the same office, approved March 20, 1813, p. 136. The court ruled that the act of 1813 was not repealed by the act of 1855 and therefore that the office was not thereby made vacant. The important point in the case cited was that, in that case, the new statute on the subject did not purport to shorten the term of office, as the court observed, on page 442 of the report, viz.: "The same term and the same mode of appointment have been redeclared in the Act of March 14, 1855, and still no change is made in the office itself or its duties." In the case of State ex rel. Downes v. Towne, the ruling was that an officer whose term of office was "fixed in the Constitution" could not be legislated out of office. We quote from page 492 of the report (the italics being ours), viz.: "It was not in the power of the Legislature to legislate him out of office or to diminish or increase his term of office *as*

*fixed in the Constitution."* In State v. Bain and in State v. Dunson, the ruling was that, in so far as a statute which declared a certain act on the part of a public official to be a misdemeanor declared also that a conviction for the offense should operate as a removal from office, the statute was unconstitutional, because the Constitution prescribed a *civil process* for removal from office, and impliedly forbade any other process. The Act 126 of 1928 does not provide a proceeding for removal from office, and is not violative of article 9 of the Constitution.

Appellant's sixth contention is that, if the Act 126 of 1928 does not violate article 9, generally, by providing an unauthorized method of removal from office, it violates the third section of that article, in so far as the statute undertakes to "address" Dr. Dowling out of office, because a removal cannot be accomplished by that process except—as declared in that section—"on the address of two-thirds of the members elected to each house of the Legislature." That method of removal from office applies only to a removal "for any reasonable cause," and the provisions of the Constitution on the subject are therefore not at all applicable to this case.

Appellant's seventh and final argument is that the Act 126 of 1928 violates the thirty-fourth section of article 3 of the Constitution, which declares that the salaries of public officers, whether fixed in the Constitution or otherwise, may be changed by a two-thirds vote of the members of each house of the Legislature. In support of the argument it is said that the act of 1928 undertakes to reduce the salary of the president of the state board of health from $42,000 to $28,000 (perhaps meaning $24,000), and that the statute was adopted by a majority vote less than two-thirds of each house of the Legislature. We assume that what is meant by those figures is that the salary for each full term of office was reduced to four-sevenths of the original amount, by the shortening of the term of office from seven to four years. What is meant by the thirty-fourth section of article 3 of the Constitution is that a public officer's salary for any given time, or rate of salary, shall not be changed except by a two-thirds vote of the Legislature. A decrease or an increase in a term of employment is never regarded as a reduction or an increase of salary. The act of 1928, therefore, does not violate the thirty-fourth section of article 3 of the Constitution.

The judgment is affirmed.

### On Application for Rehearing.

PER CURIAM. By virtue of the provisions of Act 126 of 1928, the Governor of the state appointed the relator, Dr. Joseph A. O'Hara as president of the Louisiana state board of health on August 20, 1928, during a recess of the Senate. Relator was duly commissioned by the Governor, has taken his oath of office, and has complied with all requirements of the law.

During the pendency of the application for rehearing in this case, the respondent, Dr. Oscar Dowling, filed an exception to relator's petition on the following grounds:

First. That relator's appointment is null and void and inoperative, and has never taken legal effect, and respondent is entitled to hold over until the appointment of his successor has been perfected by the required concurrence of the Senate.

Second. That if relator's appointment was legal and valid, and of full force and effect, it lapsed and fell thereafter by the failure of the Governor of the state to send the name of the appointee to the Senate for confirmation during the special session, which convened December 10–16, 1928.

Third. That, for these reasons, the Attorney General has no further right or capacity to stand in judgment in this case, since no

other grounds for respondent's removal are involved than the right of relator to the office.

1. We have held that Act 126 of 1928, under which relator was appointed by the Governor, is constitutional and valid. The effect of this act was to remove respondent from office and to put an end to his term of office as president of the state board of health.

Since Act 126 of 1928 went into effect during the recess of the Senate, and relator has duly qualified under the commission issued under the act, respondent occupies the same position as if the term of his office had expired by limitation while the Senate was not in session.

In State et al. v. Young, 137 La. 102, 68 So. 241, cited by respondent, this court, after an exhaustive review of the authorities on the subject, held that expiration of office creates a vacancy, which may be filled by appointment during the recess of the Senate, and that the appointee may take the oath and enter upon the discharge of the duties of the office before his appointment is confirmed by the Senate.

It was also held in the Young Case that the right of an officer, whose term has expired during the recess of the Senate, to continue to discharge the duties of his office, until his successor is inducted into office, cannot interfere with the authority of the Governor to appoint his successor, nor with the right of the successor to be inducted into office as soon as he has taken the oath and qualified in the manner prescribed by law. Const. 1913, art. 172; Const. 1921, art. 19, § 6.

The Young Case was a suit for the possession of the office of examiner of state banks, and was brought under the intrusion into office act. The plaintiff, R. N. Sims, was appointed and commissioned by the Governor on January 6, 1915, *during a recess of the Senate*, to succeed the defendant, Young, whose term of office was supposed to have expired. The latter refused to surrender the office, asserting that his term had not expired, and that in any event he had the right to hold over until the appointment of his successor *is confirmed by the Senate.*

Sims, the plaintiff, contended that Young's term of office expired either on August 30, 1914, or on December 28, 1914, and that the expiration created a vacancy which the Governor had authority to fill by appointment during a recess of the Senate.

Young, the defendant, contended that his term did not expire until July 24, 1916, and, in the alternative, in the event it be held that his term did expire in 1914, he insisted that the expiration of his term *did not create a vacancy* in the office such as the Governor could fill by appointment during a recess of the Senate, "because he (defendant) is fulfilling the duties of the office, and has a right to hold over until his successor shall be appointed, *and the appointment confirmed by the Senate.*"

The office of state bank examiner was created by article 194 of the Constitution of 1898, and the office of state health officer was created by article 6, § 11, of the present Constitution. Each of these offices is a constitutional office, and each is filled by appointment by the Governor, with the advice of the Senate.

If you substitute Dr. O'Hara for Sims, and Dr. Dowling for Young, you have in State v. Young, 137 La. 102, 68 So. 241, a case identical with the present case.

Defendant, Young, contended that the expiration of a term of office during the recess of the Senate does not cause a vacancy in the office because the Constitution provides: "All officers, except in case of impeachment or suspension, shall continue to discharge the duties of their offices until their successors shall have been inducted into office." Article 172, Const. of 1898.

In the present case Dr. Dowling makes the same contention, based on article 19, § 6, of the present Constitution which declares: "All officers, state, municipal and parochial, except in case of impeachment or suspension, shall continue to discharge the duties of their offices until their successors shall have been inducted into office."

Mr. Justice O'Niell, as the organ of the court in the Young Case, said: "Until now it has never been doubted—perhaps because no one . has [ever] thought of denying—that, when the term of *an appointive office* expires during a recess of the Senate, the person appointed to succeed to the office may immediately qualify and enter upon his official duties, *without waiting for his appointment to be confirmed by the Senate.*

"Counsel for defendant refer us to the case of State ex rel. Attorney General v. Rareshide et al., 32 La. Ann. 934, where this court laid down the doctrine:

"'Appointments of public officers by the Governor which are by law subject to the advice and assent of the Senate are inoperative, if made after adjournment of the Legislature, unless to fill up *such vacancies as are caused by death, resignation, or removal.*'

"It was not said, however, in the above syllabus, nor in the opinion with regard to the facts of that case, that such appointments are inoperative if made *during a recess of the Senate.*" State v. Young, 137 La. 113, 114, 68 So. 245.

"Our analysis of the facts of the Rareshide Case discloses that the decision is not a precedent for holding that the expiration of a term of office does not create a 'vacancy' in its legal sense. Nor was the question decided in the case of State ex rel. Baumback v. Dubuc, 9 La. Ann. 237, where the Governor had undertaken, during a recess of the Senate, to appoint a successor to an officer whose term had not expired." Page 116 of 137 La. (68 So. 246).

"It is true the court quoted a California case (People ex rel. Parkinson v. Bissell, 49 Cal. 407) and cited decisions rendered in other jurisdictions, declaring that the expiration of the term of an appointive office does not cause a vacancy that the Governor may fill without the advice and consent of the Senate, if the expiration occurs during a recess of the Senate, and the incumbent has the legal right and is willing to discharge the duties of the office until his successor is appointed and qualified.

"But these expressions went further than was necessary, and, in so far as they went beyond the facts and issue presented, they are mere obiter dicta, and form no part of the decision." Pages 115, 116 of 137 La. (68 So. 246).

"Defendant's counsel have referred us to a sentence in 29 Cyc. 1399, announcing the doctrine, supported by numerous decisions cited in the footnotes, viz.:

"'Where provision is made by statute for holding over, the hold-over is regarded as in all respects a de jure officer, and the expiration of the term does not produce a vacancy which may be filled by the authority having the power to appoint to fill vacancies.'" Page 116 of 137 La. (68 So. 246).

But, says Mr. Justice O'Niell in the Young Case: "The plaintiff's counsel have submitted another list of decisions holding that, when a term of office *expires* during a recess of the Senate, and the incumbent is holding over, under express authority of the law, until his successor is inducted into office, *there is a vacancy* in the office, which the Governor may fill by appointment." Pages 116, 117, of 137 La. (68 So. 246).

And this line of decisions is followed in the Young Case.

In the original opinion in this case, written by the Chief Justice, it is held that Act 126 of 1928 is constitutional and valid, and had the effect of removing respondent, Dr. Dow-

ling, from office. If removed, his term of office has expired, and, if expired, there must be a "vacancy" under the holding in the Young Case, which may be filled by the Governor, without the right of hold-over by the respondent.

It is clear, therefore, that if relator was not rejected by the failure of the Governor to have the recess appointment confirmed at the special session of the Senate, held December 10–16, 1928, his commission is still in full force and effect, and, as the rightful claimant to the office, relator is entitled to all of the emoluments from the date of his qualification under his commission until the office is surrendered to him by respondent. Act 102 of 1928, § 3.

2. The question, therefore, for decision is whether the failure of the Governor to send relator's name to the Senate for confirmation at the special session was equivalent to a rejection or not.

The determination of this question depends entirely upon the legal proposition whether, under the present Constitution, it is the mandatory duty of the Governor to have recess appointments confirmed at a special session of the Legislature, or whether it is merely a matter within his discretion.

Section 12 of article 5 of the Constitution of 1921 declares that: "The Governor shall have the power to fill vacancies that may occur during the recess of the Senate, in cases not otherwise provided for in this Constitution, by granting commissions which shall expire at the end *of the next session.* * * * The failure of the Governor to send to the Senate the name of any person appointed to office, as herein provided, shall be equivalent to a rejection."

It is provided in section 8 of article 3 of the Constitution of 1921 that: "The Legislature [of the State] *shall meet* at the seat of government *on the second Monday in May, 1922,* at twelve o'clock noon, *and biennially thereafter,* and the sessions thereof shall be limited to sixty days."

These are the regular or biennial sessions of the General Assembly of the state. They are compulsory sessions and are held at fixed and consecutive dates. At these sessions, ample time and opportunity are afforded for the consideration of general legislative and administrative measures, including the proper investigation of recess appointments and their confirmation or rejection by the Senate.

No dates for holding special sessions are established in the Constitution of 1921.

Therefore, in construing the provision of section 12 of article 5 of the present Constitution, it cannot be well doubted that the regular or biennial session is intended as the proper session, or "the next session," at which a recess appointee must be confirmed, since the date of no other legislative session is fixed in the Constitution of the state, either as a first or a successive session.

Besides, from the very nature of a regular or biennial session, it is the appropriate session for the confirmation of recess appointments by the Senate.

The question before us for decision is not whether the confirmation of a recess appointee may not be made at a special session, but whether it is the mandatory duty of the Governor of this state to have such confirmation acted upon at any other than a regular or biennial session. In our opinion, section 12 of article 5 must be construed in connection with section 8 of article 3 of the Constitution, fixing the dates for the sessions of the Legislature, in order that we may determine what is intended by "the next session," as used in section 12 of article 5.

Under section 8 of article 3, it is manifest that "the next session" refers to the next regular or biennial session of the Legislature.

In fact, special sessions are of such exceptional character, and are so limited as to duration and as to objects of legislation, that

they are not even included under the head of "Legislative Department" in the present Constitution, but are placed under the head of "Executive Department" and within the control of the Governor of the state.

At his discretion, the Governor may call a special session, set the date for its assembling, determine the length of its sitting, and designate the objects of legislation to be enacted. Const. 1921, art. 5, § 14.

Under such conditions, it would be anomalous indeed if the chief executive of the state did not have the discretion to decide also whether recess appointments shall or shall not be confirmed by the Senate at a special session; especially as such session is convened on extraordinary occasions only, and is intended primarily for the enactment of emergency legislation, and not for action upon administrative measures. Besides, the appointive power is vested exclusively in the Governor of the state by the Constitution, and therefore it is left to him to take the initial step in having recess appointees confirmed by the Senate.

In its very nature, a special session is inappropriate for the confirmation of recess appointments.

We have not been able to find any provision in the state Constitution, either under the heads of "Legislative Department" or "Executive Department," which may be reasonably construed as charging the Governor of the state with the mandatory duty of sending to the Senate the names of recess appointees for confirmation at a special session.

Therefore, our conclusion is that, under section 12 of article 5 of the present Constitution, the Governor is compelled to have recess appointees confirmed by the Senate only at regular or biennial sessions of the Legislature, although, in his discretion, he may have such appointees confirmed at a special session. State ex inf. Major, ex rel. Sikes v. Williams, 222 Mo. 268, 121 S. W. 64, 17 Ann.

Cas. 1006; People ex rel. Knight v. Blanding, 63 Cal. 333; 22 Ruling Case Law, p. 432.

It follows that the failure of the Governor to send the name of relator to the Senate for confirmation at the special session, held December 10–16, 1928, did not operate as a rejection of his appointment, and that he may be confirmed later at the regular or biennial session of the Legislature in 1930.

Relator, therefore, is the rightful claimant to the office of president of the Louisiana state board of health. He is duly qualified to fill the position, and may at once take possession of the office and enter upon the discharge of his duties.

Respondent cites State ex rel. Morgan v. Kennard, 25 La. Ann. 238, State ex rel. Meyer v. Van Tromp, 27 La. Ann. 569, and State v. Powell, 40 La. Ann. 241, 4 So. 46, 8 Am. St. Rep. 522, in support of his contention that it was the compulsory duty of the Governor to send in the name of relator to the Senate for confirmation at its special session.

In the Kennard and Meyer Cases, the recess appointee first named was not presented for confirmation at the special session of the Legislature for the plain reason that a new appointee was subsequently named and confirmed in his stead at that session. In the Kennard Case, Kennard was the first recess appointee named, but Morgan later was nominated and confirmed by the Senate at the next special session. In the Meyer Case, Van Tromp was the first recess appointee named, but thereafter Meyer was nominated and confirmed at the next special session.

The real issue in both of these cases is made unmistakably clear in the Meyer Case by the following citation from the opinion in that case: "When the Senate was in recess, a vacancy occurred in the office of recorder of the parish of West Feliciana. Van Tromp was appointed to fill it. The Governor afterward convened the Legislature in extra session. At this session he nominated J. G. Meyer for

the office. The nomination was confirmed, and a commission was issued to him. *Van Tromp claims that the appointment of Meyer was illegal, and refuses to give him up the office.* The vacancy having occurred when the Senate was not in session, the nomination to fill the same was properly made at the called session, which was the 'next session' after the vacancy occurred. *To fill this vacancy the Governor had the power to nominate whom he pleased, and this without regard to any appointment he might have made during the recess.*" (Italics ours.)

So, it is apparent that the first named appointee in each of these cases lost his appointment not because the Governor *failed,* under article 61 of the Constitution of 1868, *to send in his name at "the next session" of the Senate,* but for the plain reason *that his name was withdrawn before* the next special session convened, and another person was nominated and confirmed by the Senate for the place.

It is obvious, therefore, that the attempt of the court to justify its decision in the Kennard Case, on the ground that Kennard was rejected because his name was not sent into the Senate for confirmation before the end of "the next session;" is beside the question and is purely obiter dictum.

It was not necessary in the Kennard Case for the court to interpolate the word "special," between the words "next" and "session," in article 61 of the Constitution of 1868 (similar in its provisions to section 12 of article 5 of the present Constitution), in order to maintain the decision in that case as, manifestly, the only sound reason upon which it was based, as stated in the Meyer Case, was that "the Governor had the power to nominate whom he pleased, and this without regard to any appointment he might have made during the recess." Unquestionably, this is a correct statement of the actual issue involved in each of these cases.

We do not criticize the Kennard Case or the Meyer Case for holding that recess appointments *may be* confirmed at a special session of the Legislature, but we are thoroughly convinced, for the reasons already assigned, that such confirmation *is obligatory only at the next regular session of the Legislature.*

In order to make this view of the case apparent, we quote from the Constitution of 1868 the following articles:

"Art. 17. The General Assembly *shall meet annually on the first Monday in January,* unless a different day be appointed by law."

"Art. 61. The Governor shall have power to fill vacancies that may happen during the recess of the Senate, by granting commissions, which shall expire at the end of *the next session thereof,* unless otherwise provided for in this Constitution."

If we began with the first Monday in January, 1870, and asked when "the next session" of the Legislature would take place under the Constitution of 1868, we would undoubtedly receive the answer that "the next session" would commence the first Monday in January, 1871, and would be a regular session. This is the plain, common-sense interpretation of Articles 17 and 61 of the Constitution of 1868, notwithstanding learned dissertations on the subject to the contrary. Necessarily, a commission granted for a recess appointment in 1870 must be confirmed at the next regular session in 1871, and not before.

The Senate does not convene separately from the House of Representatives, and cannot hold a session except when the Legislature meets. "The next session," provided for in the Constitution of 1868 and in the present Constitution, being a regular session for the entire General Assembly, it is necessarily a regular session for the Senate, a component part of the legislative body of the state.

In State v. Powell, 40 La. Ann. 241, 4 So. 46, 8 Am. St. Rep. 522, a tax collector was

appointed during the recess of the Senate, and executed an official bond on May 26, 1880. As stated in the opinion in that case, "the commission under which the bond was furnished, * * * *was limited to the end* of the ensuing session of the Legislature, to wit, December 24, 1881."

Because of the limitation in the commission itself in the Powell Case, the court was compelled to hold that the commission expired at the end of the special session, without the necessity of interpreting article 61 of the Constitution of 1868.

In State ex rel. Duffy v. Goff, 135 La. 340, 65 So. 483, it is said: "Again, though relator was appointed to an office by the Governor of the state, under article 157 of the Constitution, the Senate has rejected him. The Governor failed to send relator's name to the Senate. Article 72. Relator admits that he has not been confirmed by the Senate, which was in session in 1913. He has been rejected; and he has no interest in any office."

But it is also stated in the Goff Case:

"Relator is not interested in the office held by respondent. The office to which relator was appointed to, and in which he was interested, *has been abolished.* He therefore has no right or cause of action."

"Relator has no interest in prosecuting this suit against respondents; and, were some of the issues raised by him decided *in his favor*, he could *not hold the office*, he seeks, and he could not be declared to be entitled to the emoluments thereof claimed by him." Page 345, of 135 La. (65 So. 484).

To hold in the Goff Case that relator had no standing in court, because the office to which he was appointed *had been abolished*, and then to add that relator *lost the office*, because "the Governor failed to send his name to the Senate," is not only illogical and inconsistent, but is rank obiter dictum for the plain reason that there was *no office* for rela-

tor to fill, even had his appointment been confirmed at the special session of the Senate.

3. At the instance of the recess appointees of Governor Simpson, confirmed at the special session in the year 1927, the Attorney General rendered an opinion holding the confirmations to be legal and valid, a proposition of law that no one disputes.

The question, however, of the mandatory duty of the Governor to have such appointments confirmed at a special session was not before the Attorney General at that time for opinion or ruling. He was dealing only with the validity vel non of recess appointments already confirmed at a special session of the Legislature.

In the opinion of the Attorney General only two authorities are cited. One is a decision of the Supreme Court of Missouri, State ex inf. Major, ex rel. Sikes v. Williams, 222 Mo. 268, 121 S. W. 64, 17 Ann. Cas. 1006, holding that the Senate *may* confirm recess appointments made at a special session. The other is State ex rel. Morgan v. Kennard, 25 La. Ann. 245. We have analyzed this case already in the present opinion. It is authority only to the extent that recess appointments are permissible at special sessions of the Legislature.

Neither of the authorities cited makes it the mandatory duty of the Governor to have recess appointments confirmed at a special session. We do not concur, therefore, in the opinion of the Attorney General, expressed in his brief in this case, that such confirmations are necessary at a special session.

Because of the opinion of the Attorney General, respondent has filed a motion to dismiss the appeal on the ground that the Attorney General, the real plaintiff in this proceeding, has admitted that he has no case.

We overrule this motion, for the reason that the Attorney General has not concurred in the motion to dismiss, and for the addi-

tional reason that we do not approve his interpretation of the law. C. P. art. 594.

 The real reason why a recess appointee may be confirmed at a special session is not because the Governor of the state is compelled, by the organic law, to have the confirmation made at such session. It is not because the term, "next session" of the Senate, as used in the Constitutions of 1868 and 1921, includes a special session; but because such confirmation is an administrative and not a legislative act, and it is not necessary, therefore, that such purpose should be included in the call for the special session issued by the Chief Executive. State ex inf. Mayor, ex rel. Sikes v. Williams, 222 Mo. 268, 121 S. W. 64, 17 Ann. Cas. 1006; People ex rel. Knight v. Blanding, 63 Cal. 333.

The legal principle announced by these decisions, however, falls far short of the doctrine urged in the present case by respondent, that it is the mandatory duty of the Governor to send the names of recess appointees to the Senate for confirmation at the first special session that may intervene between regular sessions.

It would be most ill-advised, in our opinion, to compel the Governor of the state to submit recess appointments for confirmation at a special session, since such a step is too frequently the signal for a factional political fight, and the passage of urgent legislation should not be blocked or jeopardized in this way during the usually short period of a special session.

It is therefore ordered that the exception to the petition and the motion to dismiss the appeal, herein filed by respondent, be overruled.

It is further ordered that the application for rehearing be refused.

ST. PAUL, J. I concur in the result. I think the appointment should have been sent in for confirmation, but I am of opinion that the office should have been surrendered to Dr. O'Hara from the beginning, and that he, and not Dr. Dowling, is entitled to be put in possession of and remain in the office as the hold-over incumbent.

O'NIELL, C. J. (dissenting from the court's refusal either to grant a rehearing or to dismiss the suit). The defendant has filed a plea of no right of action, in which he directs our attention to the fact that Dr. O'Hara's right of action—or right to claim the office of president of the state board of health—has abated. There is submitted with the motion a certified copy of the Senate Journal, showing that an extra session of the Legislature was convened on the 10th day of December and adjourned on the 16th, and that the appointment of Dr. O'Hara as president of the state board of health, made during a recess of the Senate, was not confirmed. In fact, the Governor did not send to the Senate the name or nomination of Dr. O'Hara for confirmation as president of the state board of health; and, according to the language of the Constitution (article 5, § 12), the failure of the Governor to send to the Senate the name of any person appointed to office during a recess of the Senate is equivalent to a rejection, and the person so "nominated for office and rejected" is not eligible to be appointed to the same office during a recess of the Senate, or except by and with the advice and consent of the Senate. The eleventh section of article 5 of the Constitution authorizes the Governor to nominate, and, by and with the advice and consent of the Senate, to appoint, all officers whose offices are created by the Constitution and whose appointment or election is not otherwise provided for in the Constitution; and the twelfth section allows the Governor to make temporary appointments during a recess of the Senate, viz.:

"Section 12. The Governor shall have the power to fill vacancies that may occur during the recess of the Senate, in cases not otherwise provided for in this Constitution, by

granting commissions which shall expire at the end of the next session; but no person who has been nominated for office and rejected shall be appointed to the same office during the recess of the Senate. The failure of the Governor to send to the Senate the name of any person appointed to office, as herein provided, shall be equivalent to a rejection."

It is true that "the next session" of the Senate, held after the appointment of Dr. O'Hara, was an extra session, but the language of the Constitution does not make or admit of any exception in that respect. The language is that the authority of the Governor to make appointments during a recess of the Senate is limited to the "granting of commissions which shall expire at the end of the next session." The writers of the Constitution were well aware that "the next session" of the Senate, after the making of recess appointments by the Governor, might be an extra session, as distinguished from a regular session; and, if the writers of the Constitution had intended to extend the authority of the Governor, in the making of recess appointments, so as to allow him to grant commissions which should not expire until the end of the next "regular" session of the Senate, the writers of the Constitution would have written it so. This court decided, in March, 1873, in the well-known case of State ex rel. Morgan v. Kennard, 25 La. Ann. 238, that the words "at the end of the next session" were not at all ambiguous—and meant literally and exactly what they said—and that the court had no authority to change the language so as to read "at the end of the next regular session." The court was dealing with article 61 of the Constitution of 1868, which declared:

"The Governor shall have power to fill vacancies that may happen during the recess of the Senate, by granting commissions, which shall expire at the end of the next session thereof, unless otherwise provided for in this Constitution," etc.

Four constitutional conventions, that of 1879, that of 1898, that of 1913, and that of 1921, have adopted that exact language, "by granting commissions which shall expire at the end of the next session," and have not seen fit to change the language to "next regular session," since this court announced, in State ex rel. Morgan v. Kennard, in March, 1873, that the words "next session" did not mean only "next regular session," but meant "next session"—whether a regular or special session. Each one of the four constitutional conventions, therefore, used the words "next session" with the knowledge that the words were held by the Supreme Court of the state to mean, not only "next regular session," but literally "next session"—whether a regular or special session. If the members of the Constitutional Convention of 1879, or of 1898, or of 1913, or of 1921, were not satisfied with the meaning which this court had given to the words "next session," surely they would have used the words "next regular session." It cannot be supposed that every delegate in those four constitutional conventions was ignorant of the decision which this court had rendered in the cause célèbre, entitled State ex rel. Morgan v. Kennard. It was deemed an important part of the history of the Supreme Court of Louisiana, by Henry Plauche Dart. See Centenary of Louisiana Supreme Court, p. 30. Governor Warmoth, during a recess of the Senate, appointed John H. Kennard a Justice of the Supreme Court, to succeed Justice W. W. Howe, who had resigned. The Justices of the Supreme Court were then (according to article 75 of the Constitution of 1868) appointed by the Governor, "by and with the advice and consent of the Senate." Governor Warmoth was impeached, and, pending the impeachment proceedings, P. B. S. Pinchback, acting Governor, having been elected President of the Senate, and having become Lieutenant Governor by the death of Lieutenant Governor Oscar J. Dunn, appointed Philip Hickey Morgan to the judgeship

made vacant by the resignation of Howe. The next session of the Legislature, after the appointment of Kennard and of Morgan, happened to be an extra session, and, at that session, the Senate confirmed the appointment of Morgan, and not the appointment of Kennard. Meantime, Kennard had taken the oath of office and was serving as a Justice of the Supreme Court. Morgan and the Attorney General brought suit against Kennard under a statute (Act of January 15, 1873 [Act No. 39 of 1873]) similar to the statute under which the present suit was brought. The question in the case was whether Justice Kennard's commission had expired at the end of the extra session or should continue in force until the end of the next regular session of the Senate; and that depended upon whether the Senate had authority to confirm appointments in an extra session of the Legislature. The court decided in favor of Justice Morgan, saying:

"The language of the Constitution seems too clear to admit of but one construction— 'until the end of the next session of the Senate.' It is not denied that there was an extra session of the General Assembly convened on the ninth day of December, 1872; but it is contended that the Constitution in article sixty-one refers to ordinary or regular sessions. The Constitution authorizes the Governor to convene the Legislature on extraordinary occasions. There is no reason therefore to say that article 61 refers only to the regular or annual sessions of the General Assembly— and we cannot construe article 61 in the manner contended for by the defendant, without interpolating the words regular or ordinary in the article—which, of course, we cannot do. It is manifest from article 75 of the Constitution that it was the intention of the framers of the Constitution that the judges of the Supreme Court should be appointed by the Governor, 'with the advice and consent of the Senate,' and article 61 provides for a contingency which might arise, but it limits the duration of the commission of the officer, appointed when the advice of the Senate could not be had, to the end of the 'next session of the Senate,' during which session the Governor can, if he wishes, have the advice of the Senate. This limitation was a restriction upon the power conferred upon the Governor ex necessitate rei. There is no merit in the defense."

The only criticism that is made by counsel for the plaintiff in this case, of the decision rendered in State ex rel. Morgan v. Kennard, is that it was rendered by a carpet-bag court. That is true, but the decision itself was only an adherence to the plain language of the Constitution, which should speak for itself. There were no carpet-baggers in the several constitutional conventions which have approved the court's ruling in State ex rel. Morgan v. Kennard, by using in all subsequent Constitutions the same language which was used in article 61 of the Constitution of 1868. If any of the four constitutional conventions held since this court decided the case of State ex rel. Morgan v. Kennard had not approved of that decision, they would have done what the court had no right to do—they would have interpolated the word "regular" or "ordinary," so as to allow the Governor, in making recess appointments, to issue commissions which would not expire until the end of the next *regular* session of the Senate.

The same literal construction was put upon the language of article 61 of the Constitution of 1868 in State ex rel. Meyer v. Van Tromp, 27 La. Ann. 569; the facts of the case being stated in the opinion, thus:

"When the Senate was in recess, a vacancy occurred in the office of recorder of the parish of West Feliciana. Van Tromp was appointed to fill it. The Governor afterward convened the Legislature in extra session. At this session he nominated J. C. Meyer for the office. The nomination was confirmed, and a commission was issued to him.

"Van Tromp claims that the appointment

of Meyer was illegal, and refuses to give him up the office.

"The vacancy having occurred when the Senate was not in session, the nomination to fill the same was properly made at the called session, which was the 'next session,' after the vacancy occurred. To fill this vacancy the Governor had the power to nominate whom he pleased, and this without regard to any appointment he might have made during the recess."

The attorneys for Dr. O'Hara contend in their brief that the Senate had not the authority to confirm his appointment at the extra session because the confirming of appointments was not mentioned in the Governor's call for the extra session, as one of the objects of calling the extra session. I believe that every member of the court agrees with me that the limitation upon "the power to legislate," in the second paragraph of the fourteenth section of article 5 of the Constitution has nothing to do with the power to confirm appointments made by the Governor. The language of the Constitution is: "The power to legislate, under the penalty of nullity, shall be limited to the objects specially enumerated in the proclamation of the Governor," etc. Confirming appointments is not an exercise of *the power to legislate*. The power to legislate is not given to the Senate, except in concurrence with the House of Representatives. The power to confirm appointments made by the Governor is vested in the Senate alone, and is only an administrative function.

It is admitted in the brief of the plaintiff, and is a historical fact, that, heretofore, in every extra session of the Legislature, the Senate has confirmed recess appointments made by the Governor; and it is admitted that in some instances the confirming of appointments was mentioned in the Governor's proclamation and in other instances it was not so mentioned. It is admitted that the recess appointments made by Governor Simpson were confirmed by the Senate in the extra session of 1927, without any mention thereof being made in the Governor's call for the extra session; but it is said in the plaintiff's brief that all of the Simpson appointees, who were confirmed by the Senate in the extra session of 1927 resigned on request. I am sure that that is a mistake, for Governor Simpson made 50 recess appointments of notaries public, whose appointments were confirmed by the Senate in the extra session of 1927, and none of them has resigned or been removed from office.

Article 69 of the Constitution of 1879 was exactly like the twelfth section of article 5 of the present Constitution. It declared that the Governor had the power to fill vacancies that might happen during a recess of the Senate, by granting commissions which should expire "at the end of the next session," and that any person nominated for office by the Governor and rejected by the Senate could not be appointed to the same office during a recess of the Senate, and that a failure of the Governor to send to the Senate the name of any person appointed to office should be equivalent to a rejection. In the case of State v. Powell, 40 La. Ann. 241, 4 So. 447, in March, 1888, Mr. Justice Fenner, for the unanimous court, composed of Chief Justice Bermudez and Justices Poche, Fenner, Watkins, and McEnery, construed the language of the Constitution literally, and said:

"Under article 69 of the Constitution, the term of an officer appointed by the Governor during the recess of the Senate cannot extend beyond the end of the *next ensuing* session of the Legislature; and where the same name is subsequently sent to the Senate and confirmed, and a new commission is issued, the latter is a distinct appointment and requires a new bond."

According to that decision—which is in accord with the precise language of the present

Constitution—Dr. O'Hara's commission as president of the state board of health, under his recess appointment, expired at the end of the last session of the Legislature, and he is not now eligible to hold the office under a recess appointment. The Governor has the authority to appoint some one else during the recess of the Senate, or he may appoint Dr. O'Hara with the advice and consent of the Senate, at its next session, whether it be a called session or the regular session; but Dr. O'Hara does not now hold—and is not eligible to hold—a recess appointment to the office.

The jurisprudence in the other states is entirely in accord with the opinion which I am now expressing. In the matter entitled In re Advisory Opinion to the Governor, 64 Fla. 16, 59 So. 782, where the Governor of Florida asked for an opinion as to whether he should submit his nominations of certain officers to the Senate in a special session of the Legislature, or whether the appointments which he had made during the recess of the Senate would remain in force until the end of the next regular session, under constitutional provisions similar to ours, the court replied:

"When the Legislature is convened in extra session by executive proclamation, it is the duty of the Governor under the Constitution to transmit to the Senate, for its action thereon, appointments to the offices of circuit judge, state attorney and judge of the criminal court of record that have been made since the adjournment of the last session of the Senate.

"Under Const. art. 4, § 8, relating to extra sessions of the Legislature, and providing that it shall transact no 'legislative business' other than that for which it is especially convened, or which is called to its attention by the Governor, except by a two-thirds vote of each house, the confirmation by the Senate of executive appointments to office cannot be regarded as 'legislative business,' since such confirmation is not essentially legislative in its nature, and does not require the co-operation of the House of Representatives.

"The Constitution clearly contemplates joint action by the Governor and Senate in the matter of these appointments, when possible and as soon as possible, and the provision for a locum tenens until the Senate may act requires the construction that the Senate should be permitted to act when next in session, however convened."

In People ex rel. Knight v. Blanding, 63 Cal. 333, it was held:

"The constitutional limitation on the power of the Legislature when convened in extra session applies only to acts of legislation—the joint action of the Senate and Assembly. Whenever the Legislature is lawfully convened, the Senate may confirm appointments made by the Governor."

In State v. Williams, 20 S. C. 12, where the Constitution provides that "the Governor shall appoint, by and with the advice and consent of the Senate, if in session, and, if not in session, subject to the approval of the Senate at its next session," the court held that the words "next session" meant the next session, in fact, whether regular or special session.

In State ex. inf. Major, ex rel. Sikes v. Williams, 222 Mo. 268, 121 S. W. 64, 17 Ann. Cas. 1006, it was held:

"The confirmation by the Senate of appointments made by the Governor are not legislative acts, and in our opinion can be made as well at a special session as a regular session. Such acts by the Governor concerning appointments are merely administrative and can be confirmed by the Senate whenever that body is in session, and it is immaterial for what purpose the legislative body may have been called in session. In other words, whenever the body is lawfully convened for legislative purposes it has the right to act for administrative purposes, even without mention

of such purpose in the call for a special session."

The case of State v. Boucher, 3 N. D. 389, 56 N. W. 142, 21 L. R. A. 539, is quoted in 22 R. C. L. 433, § 84, thus:

"If, on the expiration of the term of office of a public officer, an appointment of a successor is made by the Governor but it is not confirmed by the state Senate as required by a law of this type, such successor does not obtain the right to enter on the duties of the office, but the former incumbent may hold over until a successor is properly appointed and confirmed."

Every member of the court—as I understand—agrees with me that the Senate has the same authority in an extra session as in a regular session of the Legislature to confirm appointments made by the Governor. The Senate does not in truth confirm appointments made during the recess of the Senate, but confirms the nominations made by the Governor and submitted to the Senate in session. As this court held in the case of State v. Powell, 40 La. Ann. 241, 4 So. 447, when the name of a person who was appointed to office during a recess of the Senate is sent to the Senate and confirmed, "the latter is a distinct appointment and requires a new bond," for the recess appointment, which was made without the advice or consent of the Senate, has expired—according to the precise language of the Constitution.

The prevailing or majority opinion of the court seems to be that the Governor had the authority either to submit his recess appointments to the Senate in the extra session or to withhold them until the next regular session, and that, if he saw fit to withhold them, the commissions remained in force until the next regular session. That opinion is not only contrary to the decision rendered in State v. Powell, supra, but is contrary to the plain language of the Constitution, which declares that the Governor's authority to appoint during a recess of the Senate is limited to the granting of commissions which shall expire at the end of the next session of the Senate, and which emphasizes that by declaring that his failure to send a name or nomination to the Senate shall be equivalent to a rejection, and that the person so rejected shall not be appointed to the same office during the recess of the Senate—or without the advice and consent of the Senate.

It cannot be doubted that the defendant in this case has the right—for in fact it is his duty—to direct our attention to the fact that the right of Dr. O'Hara to take possession of the office of president of the state board of health—assuming that the statute under which he was appointed is valid legislation—has expired by the decision of the Governor not to have the appointment of Dr. O'Hara confirmed by the Senate. The only ground for this suit to remove Dr. Dowling was that Dr. O'Hara was appointed as his successor. The office was not abolished by the Act 126 of 1928, under which Dr. O'Hara was appointed during the recess of the Senate. The office is not vacant. Dr. Dowling is not disqualified, or subject to removal. He has remained in office under a valid appointment, and, under the sixth section of article 19 of the Constitution, he must continue to discharge the duties of the office until his successor "shall have been inducted into office." He is not amenable to any penalty for having exercised his constitutional right to remain in office while he tested in the courts the constitutionality of the statute which purported to shorten his term of office. The fact that Dr. O'Hara's commission was allowed to expire before he could take possession of the office is not attributable to any fault or wrong-doing on the part of Dr. Dowling; it was the result of the Governor's exercise of his privilege not to have Dr. O'Hara's appointment confirmed by the Senate.

The Attorney General has no right to continue the prosecution of this suit since the coplaintiff is not "rightfully entitled to the office." Section 2597 of the Revised Statutes, as amended by the Act 102 of 1928, p. 125, declares that the Attorney General, in a suit like this, "must set forth in the complaint the name of the person rightfully entitled to the office, with a statement of his right thereto." That section of the Revised Statutes, before it was amended, said: "May also set forth in the complaint the name of the person rightfully entitled to the office, with a statement of his right thereto." Therefore, since the amendment, if the office is not abolished, or vacant, and if no one— other than the incumbent—is "rightfully entitled to the office," the Attorney General has no authority to proceed merely to bring about a vacancy in the office, or to install some one who is not entitled to the office.

It cannot be contended seriously that, while this case is pending on an application for a rehearing, it is too late for the defendant to plead that the plaintiff has lost his right of action. The loss of the plaintiff's right of action did not occur until the case was pending on an application for a rehearing—when the Senate adjourned without having confirmed the appointment of Dr. O'Hara. We have no right now to place Dr. O'Hara into possession of the office of President of the state board of health, since his commission has expired, and the Governor did not see fit to send in his name or nomination for confirmation by the Senate. As long ago as 1826, in the case of Brown & Sons v. Saul's Syndics, 4 Mart. (N. S.) 434, this court said:

"All dilatory and declinatory pleas ought to precede the contestatio litis; and even peremptory exceptions should be regularly pleaded; but a total want of legal right in a suitor, in relation to the matters in litigation, ought to be taken into consideration and acted on by courts of justice, at any stage of a

cause. They should not remain silent spectators of infringements of the true principles of laws, which they are appointed to administer."

Again, in Union Bank v. Dunn, 17 La. 234, in 1841, it was said:

"An exception which goes to the absolute want of any right in the plaintiff to stand in judgment in any manner, may be pleaded after issue joined on the merits, *or at any stage of the cause.*" (The italics are mine.)

This court has as complete control over a case that is pending on an application for a rehearing—and has the same right to dismiss it or to make any other proper disposition of it—as at any other stage of the appeal. It was so said in Bloomfield v. Thompson, 134 La. 923, 64 So. 853, viz.:

"An application for rehearing in a case which has been decided by the Supreme Court has the effect of preventing the judgment from becoming final, in whole or in part, whilst the court is deliberating thereon; and, even though the rehearing be granted in terms restricting it to particular issues, the whole case remains under the control of the court, since such restriction must be construed to mean, merely, that the court desires to hear further argument upon the issues that are specified, and not upon others."

In La Casse v. New Orleans, T. & M. Railroad Co., 135 La. 129, 64 So. 1012, it was said:

"A total absence of a right of action may be urged at any stage of the cause, and so on appeal," etc.

Again, in Veasey v. Peters, 142 La. 1012, 77 So. 948, the court repeated:

"A total lack of a cause of action may be taken advantage of by exception at any stage of the proceeding, even in the Supreme Court."

Again, in State v. Winehill & Rosenthal, 147 La. 785, 86 So. 182, we said:

"It is settled by a long line of decisions of this court that an exception of no cause or

right of action, being a peremptory exception founded on law, may be pleaded at any time before final judgment has been rendered, even in the appellate court."

It will not do to say that we have not the evidence before us that the plaintiff's commission as president of the state board of health has expired. It is a historical fact, which we are bound to take notice of, that an extra session of the Legislature was convened on the 10th and adjourned on the 16th day of December, 1928, and it is shown by the official journal of the Senate, and is not denied, that the Governor did not see fit to send the name or nomination of Dr. O'Hara to the Senate for confirmation as president of the state board of health. We have the knowledge, therefore, judicially, that Dr. O'Hara is not entitled to be sent into possession of the office.

I have written this opinion without having seen any written reason which the majority of the members of the court may have for refusing either to grant a rehearing or to dismiss the suit. My belief is that no decision of any court, or opinion of any law writer, or statute law on the subject, can be cited to justify a refusal either to grant a rehearing or to dismiss this suit. I am assuming, from the discussion of the matter in consultation, that a majority of the members of the court will refuse either to grant a rehearing or to dismiss the suit.

If the suit should not be dismissed because the plaintiff's right of action has abated, a rehearing ought to be granted on the question as to whether Dr. Dowling or Dr. O'Hara is entitled to the salary of the president of the state board of health during the time when Dr. O'Hara held a commission under his recess appointment, which expired at the end of the session of the Senate. That question was not discussed, either in the oral arguments or in the briefs filed before we handed down our opinion, and was lost sight of in our decision of the case, because of the more important question of constitutionality of the statute under which Dr. O'Hara was appointed. Our attention is now called to the fact that, as amended by the third section of the Act 102 of 1928, section 2597 of the Revised Statutes does not allow the court to deprive an incumbent in office of the emoluments received by him during the pendency of a suit to oust him, except "on proof that the defendant is in bad faith in holding or attempting to retain possession of a public office and in such bad faith has received fees or emoluments belonging to said office." There is no proof, nor reason to assume, that Dr. Dowling was not in good faith in urging, in defense of this suit, that the statute which purported to shorten his term of office was unconstitutional. Before that section of the Revised Statutes was amended by the act of 1928, it declared merely: "And in such case on proof that the defendant has received fees or emoluments belonging to said office, an order may be granted," etc. The right of the plaintiff to recover the emoluments of the office was not then—as it appears to be now—dependent upon the bad faith of the incumbent who received the fees or emoluments of the office. On that question, the defendant in this case is entitled to a hearing, if the suit should not be dismissed—as I think it ought to be—for want of a right of action on the part of the plaintiff.

Since the above opinion was written, the Attorney General has filed a brief in this case, admitting that, under the plain language of the Constitution, as interpreted unanimously by the courts, Dr. O'Hara's commission expired at the end of the extra session of the Legislature. The attorneys for Dr. Dowling, therefore, have filed a supplemental motion to dismiss the suit on that additional ground.

As the Attorney General is the only party representing the state—and the only person

or official having, authority to represent the state—in this proceeding, I cannot imagine any reason that could be given now in justification for refusing to dismiss the suit. It cannot be said that Dr. Dowling has no interest in demanding a dismissal of the suit. He is the only person who has the right to demand that the suit be dismissed. He is the incumbent in office, and, as such, it is his duty, under the sixth section of article 19 of the Constitution, to continue to discharge the duties of the office until his successor shall have been inducted into office. It is admitted by the Attorney General that, under the plain language of the Constitution, Dr. O'Hara is not now entitled to be inducted into office.

Since writing the foregoing opinion, I have been shown a copy of the so-called per curiam, giving the reason for which a majority of the members of the court intend to overrule the defendant's motion to dismiss this suit. The only reason given is that it was not *compulsory* for the Governor to send to the Senate the names of his recess appointees, for confirmation, at the extra session of the Legislature. It is conceded, in this so-called per curiam, that the Senate had the authority, under the twelfth section of article 5 of the Constitution, to confirm the executive appointments made during the preceding recess of the Senate, because the extra session of the Legislature was the "next session," within the meaning of the Constitution. Hence it is conceded by the majority of the members of the court that, if the Governor had seen fit to send to the Senate the names of his recess appointees, for confirmation, at the extra session of the Legislature, and if the Senate had confirmed the appointments, the confirmations would have been valid. To say that it was not *compulsory* for the Governor to send to the Senate the names of his recess appointees, for confirmation, at the extra ses-

sion of the Legislature, in the sense that the failure of the Governor to send to the Senate the name of any person appointed to office was not equivalent to a rejection, is nothing more nor less than a contradiction of the plain language of the Constitution. The concluding sentence in the twelfth section of Article 5 of the Constitution says: "The failure of the Governor to send to the Senate the name of any person appointed to office, as herein provided, shall be equivalent to a rejection." There was no reason for inserting that provision in the Constitution, unless its purpose was to compel the Governor to send to the Senate, at its next session, the names of his recess appointees, or suffer the consequence that his failure would "be equivalent to a rejection." Much is said in this so-called per curiam about the policy or wisdom—or lack of wisdom—of that provision in the Constitution, if construed strictly. The courts have little or nothing to do with the policy or wisdom of the law. As a matter of fact, though, we know that the purpose—as shown by the positive language—of the twelfth section of article 5 of the Constitution was to compel the Governor to seek the advice and consent of the Senate, with regard to his recess appointments, at the very next opportunity that should present itself; for the rule is that the Governor shall not make any appointment without the advice and consent of the Senate, except during a recess of the Senate, and then only "by granting commissions which shall expire at the end of the next session."

THOMPSON J. (dissenting from the refusal to grant a rehearing). The questions presented on the application for rehearing are of such transcendent importance, and concern so vitally the public interest, as to demand, in my judgment, that a rehearing should be granted to the end that a full hearing in open court can be had, and the grave constitution-

al questions considered and determined in the usual and proper manner.

I cannot bring myself to believe that such emergency exists, or that it is right and proper, that such momentous questions should be considered and finally determined by the court in chambers on an application for rehearing.

However, as a majority of the court has declined to grant a rehearing, I feel compelled to record my reasons for dissenting.

I fully concur in the views expressed in the dissenting opinion of the CHIEF JUSTICE on the two main questions discussed by him —that is to say, whether the temporary appointment of the relator lapsed and ceased to be effective for lack of confirmation of the Senate at the extra session, and whether the defendant can urge the necessity of such confirmation.

The position of the CHIEF JUSTICE on the two questions in my judgment is unanswerable; that is, if the Constitution can be taken to mean what it says; and if plain words have not ceased to have their usual and accepted meaning.

It will be admitted that the Governor cannot make an appointment to fill a vacancy, except temporarily and when the Senate is not in session.

The appointments so made expire at the end of the *next session* of the Senate, unless they are confirmed by the Senate at such *next session*. The failure of the Governor to send to the *next session* of the Senate the name of the person he had appointed while the Senate was not in session has the effect of a rejection by the Senate.

This is the plain language of section 12, art. 5, of the Constitution.

Any attempt to interpolate in the Constitution the word "regular" between the words "next" and "session", is not justified, in my opinion. I can conceive of no reason for making a distinction between an extra session and a regular session in matters of confirmation of appointments.

The Senate is a part of the appointing power. It is charged with the duty and has the privilege of advising on and consenting to all appointments made by the Governor which by law are required to be submitted to the Senate. This duty and responsibility can not be evaded by the Senate when in session.

Nor can the Governor deprive the Senate of the exercise of such power of confirmation when it is in session by withholding appointments from it. If he does so, then the penalty imposed on the Governor and his appointee is the rejection of the appointment. This is the fiat of the Constitution, and the courts have no right to ignore it, or to write it differently.

If it is necessary, to complete a temporary appointment, for the Senate to confirm such appointment (and it is conceded that such confirmation can be made at an extra session), then why the necessity and whence arises the exigency, for holding that the Executive can withhold the appointments from the *next session*, which happens to be an extra session, and make the tenure of the appointee extend to the end of the next biennial session. The ruling of the court in this case destroys the very purpose and intendment of the Constitution, which obviously requires that the Senate confirm all temporary appointments which are required by law to be made by and with the advice and consent of the Senate at the very first opportunity it has to do so.

The present case is the first instance in the history of this state that such a construction as adopted by the court has been placed on the constitutional provisions.

In addition to the cases cited by the CHIEF JUSTICE, I refer to the case of State ex rel. Duffy v. Goff, 135 La. 335, 65 So. 481.

In that case Duffy was appointed November 15, 1912, by the Governor to the office of

recorder of the third recorder's court of New Orleans, to fill the unexpired term of Borne, who had resigned.

Acting under the charter (Act 159 of 1912), the mayor and council located a recorder's court in the Fifth district, and appointed Goff as the recorder thereof. The relator, Duffy, then brought suit against Goff to show cause why he Goff should not be declared a usurper, and Duffy declared to be entitled to the office. The court rejected the relator's demands for two valid and sufficient reasons, one of which was that Duffy's appointment had not been confirmed by the Senate at its session in 1913, which was an extra session.

On page 344 of the cited case (65 So. 483) the court said:

"Again, although relator was appointed to an office by the Governor of the state, under article 157 of the Constitution, the Senate has rejected him. The Governor failed to send relator's name to the Senate. Article 72.

"Relator admits that he has not been confirmed by the Senate, which was in session in 1913. He has been rejected; and he has no interest in any office."

The contention that Dr. Dowling cannot raise the question just discussed is equally as untenable and unjustified in law as the other contention. It would introduce a strange and heretofore unheard-of doctrine in jurisprudence for the court to hold that an incumbent in office, who is holding over until his successor is legally appointed, cannot question the validity of the appointment of the person who is to displace him.

The present suit was brought against the incumbent—it could be brought against no one else—and it seems to me that it would be the very refinement of absurdity to say that a defendant against whom the suit is required to be brought cannot question the right of the plaintiff to maintain his action against him.

To say that Dr. Dowling cannot raise the question is to ignore the elementary and fundamental principle that, before a party plaintiff in a suit of this character can succeed in ousting the incumbent, he must show a valid and legal title to the office which he claims.

In the case of State v. Beaird, 34 La. Ann. 280, it was held that the authority vested in the Governor to fill vacancies can only be exercised, and, when exercised, prove conclusive, where he has made an appointment to fill a vacancy actually and legally existing in the discharge of his official functions.

"In the eventuality that an appointment has not been made in such contingency, it could not prove conclusive. The issuance of a commission under it would not debar the aggrieved [incumbent] from resisting displacement and appealing to the tribunals of the country, who would then be competent, on inquiry, to determine the question of vacancy vel non."

Equally untenable in law and unsound in reason, is the suggestion that the relator's right to the office is to be determined as of the date he filed suit.

The appointment may have been legal at that time (a fact I do not admit), and if he had been inducted into the office thereby ousting the incumbent, the matter would have been ended so far as the defendant was concerned.

But the relator has never been inducted into the office. He sought the authority of the courts to put him in office, but before he could get a final decision a situation arose which rendered his appointment inoperative and ineffective.

The decisions are too numerous to require citation, where suits have been dismissed where the plaintiff, though having an interest when the suit was filed, ceased to have such interest before the case was finally determined in this court.

The opinion up to this point has proceeded on the assumption that in making the appointment of the relator the Governor exercised the authority vested in him by section 12, art. 5, of the Constitution, which provides for the filling of vacancies that may occur during the recess of the Senate, and which appointments shall expire at the end of the next session of the Senate.

It is my deliberate conviction, however, after careful examination into the matter, that there was no such vacancy in the office of president of the state board of health as would justify or authorize the appointment in the manner attempted.

The appointment of the relator was inoperative from the beginning and will continue inoperative until it is confirmed by the Senate, either in extra or a regular session.

There are only two provisions of the Constitution conferring the general power of appointment on the Governor and these are sections 11 and 12 of article 5 of the Constitution, the first of which relates to original appointments where an office has been created and is without an incumbent, and to cases where a constructive vacancy has been created but the incumbent holds over until his successor is duly appointed, confirmed, qualified, and inducted into office.

Under this article in the two instances named no appointment can become effective until confirmed by the Senate, where confirmation is required.

The second article refers to vacancies which occur when the Senate is not in session, and there is no one to discharge the duties of the office. For instance, where the vacancy occurs by death, resignation, removal, or from any other cause which leaves the office without an incumbent to perform the duties. It is only in such cases in my judgment, a vacancy occurs which requires or authorizes an appointment under section 12, art. 5, of the Constitution.

In such contingency the Governor is authorized to make a temporary appointment to last only till the Senate has met and adjourned, and hence is afforded the opportunity of confirming the appointment.

In the instant case there was manifestly no vacancy to fill which occurred during the recess of the Senate. There was obviously no unexpired term of office to be filled within the meaning and contemplation of section 12. The Governor under the express terms of the act could make no appointment except by and with the advice and consent of the Senate and that for the full term of four years.

The Constitution authorized the Legislature to create a state board of health and declared that such board should be composed of a president and eight members, who should be appointed by the Governor by and with the advice and consent of the Senate.

The Legislature put this provision of the Constitution into effect by Act 79 of 1921, and therein fixed the term of the president at seven years, dating from August 29, 1925. The defendant was appointed and confirmed by the Senate for that term.

The act of 1928 (126) did not abolish the state board of health, but, on the contrary, retained in full force section 1 of the act of 1921, which created the state board of health pursuant to section 11 of article 6 of the Constitution.

Nor did the act of 1928 abolish the office of president of the state board of health, indeed it could not do so under the plain mandate of the Constitution directing the Legislature to create it. All that the act did or was intended to accomplish, which is pertinent to this inquiry, was to recreate the board and to provide for its reorganization and to fix the term of the president and other members. The term of the president was fixed at four years, beginning August 15, 1928, and ending August 15, 1932, and he was to be appointed for that term, no more and no less, and the

appointment was to be by and with the advice and consent of the Senate.

The appointment was in no sense to be temporary, and for an unexpired term, but was for a full term, and required the advice and consent of the Senate.

No one will pretend that the Legislature was without right or power to legislate Dr. Dowling out of office by curtailing his term. But it is perfectly obvious from the plain language of this act that its object was to fix a full term for the office of president of the board of health, and that the Governor when he appointed the relator could only appoint for that term and by and with the advice and consent of the Senate.

I say therefore that in making the appointment of relator the Governor was not exercising the power of appointment as in case of a vacancy occurring during the recess of the Senate, but was doing so under an appointive power which required the concurrent action of the Senate, until which and without which, the appointment was without effect.

It is well settled in our jurisprudence that vacancies in office are either original, constructive, or accidental, or absolute, and they can only be filled by the Governor when the power to do so is expressly conferred on him and in the mode provided by the Constitution and laws. A vacancy is said to be original when an office is created and no one has been appointed to fill it. It is said to be constructive when the incumbent has no legal right or claim to continue in office, but can be legally replaced by another functionary. The vacancy is said to be accidental or absolute when, the incumbent having died, resigned, or been removed, there is no one in esse discharging the duties of the office.

It is not difficult to determine under which definition or classification of vacancy the present case falls.

It is clear that there was no original vacancy because that applies to an office created and there is no one to fill it. It was not an accidental or absolute vacancy, because Dr. Dowling was still living, had not been removed and had not resigned. It was therefore bound to fall under the designation of constructive vacancy, for the defendant was an actual incumbent, and had the legal right to continue in the office until his successor was duly appointed, and that could only be done by the Governor with the concurrent action of the Senate.

But it makes little or no difference whether the vacancy was original or constructive, for in either event no appointment could become effective until concurred in by the Senate.

The case of State ex rel. Attorney General v. Rareshide et al., 32 La. Ann. 934, is appropriate and sustains the position that the appointment of relator herein was and is without any legal effect until confirmed by the Senate.

In the case referred to the several defendants were appointed to certain offices therein named with the advice and consent of the Senate.

Before the expiration of their terms the Constitution of 1879 was adopted which vacated all offices, but the incumbents had the right to hold over until their successors were legally appointed and inducted into office. They held over after the Constitution went into effect and continued to discharge the duties of their respective offices.

The Legislature met in 1880, but the Governor made no appointments and submitted no names to the Senate to be confirmed as defendants' successors.

After the adjournment of the Senate, the Governor appointed and commissioned the relators in that suit to said offices under the pretense of filling vacancies.

The defendants holding over refused to surrender the offices, and the relators thereupon proceeded under the intrusion into office stat-

ute to oust the defendants and to have their appointments recognized.

The question presented, said the court, is whether the relators are the successors of the defendants, duly appointed and qualified, or, in other words, whether their appointment is constitutionally valid. The court proceeded to answer its own question in the negative and gave its reasons therefor.

"Had the defendants or any of them died, or resigned, or been removed, and the commissions of the last appointees, * * * expressly declared the vacancies arising from such cause or causes, and the filling of the same, we would have been powerless to go behind the appointments and pass upon the propriety or legality of the action of the executive."

"The adoption of the Constitution of 1879 of itself vacated all offices held under the previous Constitution and the laws in force under it, although the terms of those offices had not expired."

"The Governor had the right to fill, in the manner pointed out by law, the vacancies thus occasioned, but, as the defendants were in the actual discharge of their functions, holding over under constitutional authority until their successors were appointed and qualified, the power of appointment could only be exercised by and with the advice and consent of the Senate."

That is the precise situation here. The act of 1928 put an end to Dr. Dowling's term of office, but he continued in the discharge of the duties of the office under constitutional authority until his successor should be appointed in the manner pointed out by law, which is with the advice and consent of the Senate.

The court in the cited case went on to say that a vacancy is original when an office is created and no one has been appointed to fill it.

It is constructive when the incumbent has no legal right or claim to continue in office but can be legally replaced by another functionary.

It is accidental or absolute when the incumbent having died, resigned, or been removed there is no one in esse discharging the duties of the office.

"The vacancies in the cases before the court were not original or absolute in character. They were constructive vacancies. They became so previous to the assembling of the Legislature by virtue and effect of the adoption of the present Constitution, and continued so during the session of the Senate, and have not ceased to be such.

"The relators were not appointed before or during the session of the Legislature. Their appointments have not been confirmed by the Senate. They are therefore inoperative, have never taken effect, and the defendants are entitled to hold over until appointments to these offices have been perfected and made effective by the required concurrence of the Senate."

"If an office filled by appointment of the Governor requires the confirmation of the Senate, a vacancy therein, such as will authorize the Governor to fill it, without the concurrence of the Senate, can be caused only by the death or resignation of the incumbent or by the happening of some other event by reason of which the duties of the office are no longer discharged."

In the instant case there has been no death, no resignation, no removal, and the happening of no event by which the duties of the office of president of the board of health are no longer discharged.

The defendant is in the active discharge of the duties of the office under constitutional authority. The vacancy is a constructive vacancy, and while the Governor has the right to replace him by appointing a successor he

can only do so with the concurrence of the Senate. That has not been done and the appointment of the relator is inoperative.

I think a rehearing ought to be granted.