62 So.2d 86

**STATE ex rel. LA NASA v. HICKEY.**

No. 40935.

Nov. 10, 1952.

Additional Opinion Nov. 13, 1952.

Rehearing Denied Dec. 3, 1952.

Warren O. Coleman, New Orleans, for appellant.

Deutsch, Kerrigan & Stiles, New Orleans, for appellee.

LE BLANC, Justice.

On October 17, 1951, at which time the Louisiana Senate was at recess, the then Governor of the State, Honorable Earl K. Long, appointed William P. Hickey as Assessor of the Third Municipal District, Parish of Orleans, to fill the vacancy in that office caused by the death of the incumbent. The appointment was made under the provisions of Art. 5, Sec. 12 of the Constitution of 1921. Hickey qualified for the office and was discharging his duties and carrying on its functions when, on May 16, 1952, when the Senate was in regular session, the Honorable Robert F. Kennon, who had then qualified as Governor of the State, nominated and appointed Joseph La Nasa to the same office and submitted his name to the Senate for confirmation. The Senate confirmed the appointment on the same day. On June 3, 1952 La Nasa took the required oath of office and on the following day he filed the necessary bond which was regularly approved by the Governor. He then presented himself with his commission and credentials at the Assessor's office and demanded possession of same which Hickey refused. As a result he instituted the present proceeding which was filed on June 4, 1952.

The suit is strictly one for intrusion in office brought in the name of the State, on the relation of Joseph La Nasa, against

William P. Hickey, under the provisions of LSA–R.S. 42:76, 42:77. Sec. 76 reads in part as follows:

"An action shall be brought in the name of the state in any of the following cases: (1) When any person usurps, intrudes into, or unlawfully holds or exercises or attempts to remain in possession of any public office or franchise within this state. * * *"

After setting out his claim to the office and Hickey's refusal to surrender it to him, relator, in Article 8 of the petition, alleged that Hickey, "by his actions in attempting to exercise the functions of such public office and in interfering with relator in his lawful efforts to discharge his duties as Assessor for the Third Municipal District, Parish of Orleans, has become a usurper of said office within the intent and purview of Section 71 of Title 42, Louisiana Revised Statutes of 1950." He prayed for judgment decreeing and recognizing him, and not respondent to be the lawful incumbent of the office involved, ordering respondent to cede to him possession and condemning respondent to pay to him all fees and emoluments of the said office "since May 16, 1952 (the date of relator's appointment to said office), all damages (including attorneys' fees) sustained by relator by reason of respondent's usurpation of said office, * * *." He then prayed for a permanent injunction against respondent restraining him from interference with his (relator's) conduct of the office.

Respondent Hickey filed an exception of no right or cause of action. The extract from the Minutes of Court does not show what disposition was made of this exception but inasmuch as the case was tried and judgment rendered on the merits on the answer subsequently filed, we assume that it was either overruled or referred to the merits. In his answer respondent denied that relator was commissioned as averred in his petition and averred that if such commission as he claims to hold was issued it was illegally issued. He then set out the manner of his appointment and averred that he is holding the office under a legal title. He admitted that relator presented to him the commission he held but denied that he "unlawfully" refused to cede the office to him. He prayed that the suit be dismissed at relator's costs.

On July 1, 1952, the trial judge handed down written reasons for judgment in which he held that the relator's appointment by the Governor and its confirmation by the Senate was valid but that it did not have the effect of terminating respondent's previous appointment which was not to expire until the end of the session of the State Senate on July 10, 1952. He then, on his own initiative, invoked the provisions of the Declaratory Judgment Act, LSA–R.S. 13:4231 et seq. and sua sponte granted a judgment declaring relator to be the lawful incumbent of the office of Assessor from and after July 10, 1952 and ordering respondent to cede possession of

the office, its records and other property, not later than eleven o'clock a. m. July 11, 1952. He also enjoined respondent from attempting in any manner to discharge the functions of the office and from interfering with the discharge of said functions by relator from and after July 10, 1952. Respondent was granted and has perfected this suspensive appeal.

■ The Assessorships of Orleans Parish are constitutional offices filled by election every four years. Art. XIV, Sec. 20, Constitution of 1921. As the vacancy in the particular office in dispute occurred during a recess of the State Senate, the Governor had the power to fill it. This power is granted under Art. 5, Sec. 12 of the Constitution and as the issues presented involve an interpretation of its provisions as well as those of the preceding section, Sec. 11, we find it pertinent to quote them both at this time.

■ Section 11 of Art. 5 relates to the Governor's general power of appointment and it reads as follows:

"He shall nominate, and, by and with the advice and consent of the Senate, appoint all officers whose offices are established by this Constitution and whose appointment, or election, is not herein otherwise provided for; except that the Legislature may provide the mode of filling all offices created by it."

Under these provisions the power of *appointment* is not exclusive in the Governor.

He can *nominate* but the consent of the Senate is required before he can appoint.

Sec. 12 of Art. 5 relates to what may be said to be the Governor's power of making special appointments; that is those he is empowered to make without the advice and consent of the Senate and which, because of this exceptional grant of power, are of a more or less temporary nature. The section reads as follows:

"The Governor shall have the power to fill vacancies that may occur during the recess of the Senate, in cases not otherwise provided for in this Constitution, by granting commissions which shall expire at the end of the next session; but no person who has been nominated for office and rejected shall be appointed to the same office during the recess of the Senate. The failure of the Governor to send to the Senate the name of any person appointed to office, as herein provided, shall be equivalent to a rejection."

■■ Under the language of this section, Governor Long had the indisputable right to appoint Hickey to the office he did on October 17, 1951 without the advice and consent of the Senate and, under the commission which he granted to him, Hickey became the Assessor for a temporary term, that is, until the end of the Senate session next following his appointment. For either Governor Long or Governor Kennon, had either cared to do so, to continue Hickey in office for the remainder of the unex-

pired term, it would have been necessary for him to nominate him and have his nomination confirmed by the Senate at its session next following the temporary appointment made by Governor Long. Had the nomination been rejected Hickey could not have received a temporary appointment during a subsequent recess of the Senate. Also it is noted from the Constitutional provision, Sec. 12 of Art. 5, the failure of the Governor to send the name of any person appointed, as provided in Sec. 11 of the same Article, is equivalent to a rejection. Hickey's name was never sent and, of course, he is left out of consideration altogether following the adjournment sine die of the Senate on July 10, 1952.

But, it is urged on behalf of the relator, that his nomination by Governor Kennon and the Senate's confirmation, followed by his appointment, operated as a rejection of Hickey's appointment and he therefore became entitled to the office instanter. In order to support this contention three cases are cited as authority: State ex rel. Morgan v. Kennard, 25 La.Ann. 238; State ex rel. Meyer v. Van Tromp, 27 La.Ann. 569 and State ex rel. Saint, Attorney General, v. Dowling, 167 La. 907, 120 So. 593. These cases however, do not decide the precise question involved and therefore do not support the contention raised on behalf of the relator. In the Kennard and Dowling cases the issue which the court seems to have been more concerned with was whether the failure of the Governor to send the

name of the recess appointee to the Senate related to a regular or special session of that body. It is pertinent to observe, nevertheless, that in the Dowling case, the court decided that the failure of the Governor to send the name for confirmation during a special session did not operate as a rejection of the appointment. In the Van Tromp case the court held that the Governor could, during the recess of the Senate, appoint some one to fill the vacancy which occurred and then, when the Senate met in Special Session following such appointment, he could appoint another and present his name to the Senate for confirmation, without regard for the appointment previously made.

■ In discussing this point the learned trial judge aptly remarked that in order to sustain the contention that relator's nomination and confirmation constituted a rejection of respondent's appointment and brought about an immediate termination of his tenure and possession of the office, it would be necessary to interpolate certain words in Sec. 12 of Art. 5 of the Constitution which the court cannot do. It would be necessary to have that clause in the section which provides for the expiration of the commission granted the recess appointee, and declares that such commissions "shall expire at the end of the next session", read instead, "shall expire *not later* than at the end of the next session", or words to that effect. There is no reason for the court to supply anything further

and this it cannot and will not do in face of the clear and unambiguous language of the provision which grants to the Governor the power to make recess appointments "by granting commissions which shall expire at the end of the next [Senate] session; * * *."

The next question arises out of a contention made on behalf of respondent and may be posed as follows: Did Governor Kennon have the right to make an appointment by sending the relator's name to the Senate for confirmation before Hickey's commission expired and at a time when no vacancy existed in the office?

An answer to the question can be found in 67 C.J.S., Officers, § 30, wherein the general rule is stated as follows:

"The general rule is that a prospective appointment to fill a vacancy sure to occur in a public office, made by an officer who, or by a body which, as then constituted, is empowered to fill the vacancy when it arises, is, in the absence of a law forbidding it, a valid appointment, and vests title to the office in the appointee."

Indeed, that appears to be, in effect, the holding of this court in the case of State ex rel. Meyer v. Van Tromp, supra.

There is no law in Louisiana which prohibits the Governor and the Senate, the officers who, and the body which, are empowered to act in cases of this kind, from making the appointment in order to fill the vacancy which was surely to arise when the respondent's commission expired at the end of the Senate Session.

In 42 Am.Jur., Public Officers, Section 129, it is stated:

"It is, of course, a condition precedent to the exercise of the power to fill a vacancy in office that such vacancy in fact exist, or that it will surely occur within the time during which the appointing officer or body as then constituted will have authority to fill it. In such latter case the right to make a prospective appointment to fill the vacancy has been recognized. Therefore, the fact that the incumbent's term has not expired at the time an appointment is made to fill a vacancy in the office does not render the appointment invalid if it is to take effect at such expiration and the vacancy will occur during the term of office of the appointing officer."

The important element of the rule is that the vacancy must be one that is sure to occur at a fixed, definite date, at a time during which the appointing officer or body, as then constituted, will have authority to fill it. In this case there could be no doubt that the vacancy would occur at the end of the Senate session and at a time when the Governor and the Senate would have had authority to fill it, for it was at the end of the current Senate session that the respondent's commission was sure to expire. We find what we consider a pertinent observation on this point in the opinion of the

Court in the case of State ex rel. Eberle v. Clark, 87 Conn. 537, 89 A. 172, 176, 52 L.R.A.,N.S., 912. It is as follows:

"The appointment anticipates the event but is not to become effective until the vacancy occurs. The appointing authority was not bound to wait until the vacancy actually existed before designating his appointee. Expediency and convenience required that the appointment should be so made that when the respondent's term ended the successor might be qualified and prepared to take the office and enter upon its duties at once. While it is well settled that an officer or appointing body clothed with authority to appoint to a public office cannot, in the absence of express authority, make a valid appointment thereto for a term which is not to begin until after the expiration of the term of such appointing officer or body (State ex rel. Morris v. Sullivan, 81 Ohio St. 79, 92, 90 N.E. 146, 26 L.R.A.,N.S., 514, 18 Ann.Cas. 139; People ex rel. Sweet v. Ward, 107 Cal. 236, 242, 40 P. 538; State ex rel. Bownes v. Meehan, 45 N.J.L. 189, 191), it is equally well established that such officer or appointing body may make a prospective appointment to fill a vacancy which is sure to occur in a public office within the time during which the appointing officer or body, as then constituted, will have authority to fill the vacancy (State ex rel. Childs v. O'Leary, 64 Minn. 207, 210, 66 N.W. 264; People v. Fitzgerald, 180 N.Y. 269, 274, 73 N.E. 55). As the vacancy in question was sure to occur during the Governor's term of office, he might, in the manner which he adopted, properly make the appointment, in anticipation of the event."

We conclude therefore that relator's appointment made on May 16, 1952, was valid, but, under the circumstances, it could not become effective until midnight of July 10, 1952, at which time, by virtue of the adjournment of the Legislature, respondent's commission expired and the vacancy occurred. Until that moment respondent legally and validly held the office and was legally conducting its functions and discharging his duties. In no way or manner could he be said to have been a usurper on June 4, 1952, when relator demanded possession of the office, and on being refused, filed this proceeding against him. The proceeding, as alleged by the relator himself is brought against the respondent as a usurper, within the intent and purview of the intrusion in office statute, LSA–R.S. 42:71. It is significant to note that relator prayed to be recognized as the lawful incumbent of the office and that respondent be condemned to pay him all of its fees and emoluments since May 16, 1952, the date of his appointment. It is obvious that he was not entitled to such relief for on May 16, 1952, and also on June 4, 1952, when this proceeding was instituted, re-

spondent was vested with title to, and was legally in possession of, the office. He could not therefore be said to be usurping it and since relator's suit is based strictly on that ground, it follows that he was without right or cause of action. Neither was he entitled to the injunction he prayed for restraining the respondent from interfering in any way with his possession of the office and the discharge of its functions. The exception of no right or cause of action should have been maintained and the proceeding dismissed.

██ Under the conclusions we have reached we find no reason to resort to the declaratory judgment statute in order to make a declaration of rights between the relator and the respondent. The relator had no rights to be declared at the time he filed this proceeding in the manner and the form in which he did.

The judgment appealed from will have to be reversed and for the reasons now stated it is ordered that the exception of no right or cause of action herein filed on behalf of the respondent be, and the same is hereby maintained and it is further ordered that the relator's suit be dismissed at his costs.

McCALEB, J., concurs.

McCALEB, Justice (concurring).

I am in accord with the majority opinion but I believe that the Court has gone too far in holding that the Governor's right to nominate and make prospective appointments extends to the filling of all vacancies in public office which are sure to occur during the term of office of the Governor and the members of the Senate.

It is my view that the Governor's appointive power to fill vacancies under the Constitution and laws of this State does not and cannot arise until there is a vacancy in fact in the office and that no power is conferred upon him to make a prospective appointment, save in a case like this, where a temporary appointment has been made, under Section 12 of Article 5 of the Constitution, which will expire at the end of the session of the Senate by reason of the Governor's failure to send the name of the temporary appointee to the Senate for confirmation.

It is true that some of the courts of this country have approved prospective appointments to public office in cases where it appeared that the vacancy was sure to occur during the term of the executive. The majority opinion quotes 67 C.J.S., Officers, § 30, page 159, wherein it is stated that such is the general rule to be applied in the absence of a law forbidding it.

I respectfully disagree with this doctrine and the theory upon which it is founded. Without law countenancing the practice, authority to fill vacancies does not exist until there is a vacancy. Indeed, it strikes me that the courts upholding prospective appointments, on the reasoning that the law conferring the appointive power does not

forbid its use in anticipation of the vacancy, were not applying the law as written but, rather, were indulging in the legislative function of redrafting the law so as to include the additional authority in the executive.

In the case at bar, however, Section 12 of Article 5 of the Constitution clearly contemplates, in my opinion, the regular appointment, during the session of the Senate and by and with its consent, of an Officer to fill the rest of the term of the original officeholder whose death or resignation, during the recess of the Senate, caused the vacancy which has been temporarily filled by the Governor.

Accordingly, I respectfully concur.

### Additional Opinion.

PER CURIAM.

In the event any misconception of what is stated in the opinion should arise out of what evidently caused the filing of a concurring opinion, we desire to make it clear that the ruling made concerning the power of the Governor to make prospective appointments is restricted solely and only to the power to fill such vacancies as occurred in the instant case, that is, those

which are bound to occur at the adjournment of the Senate Session next following the appointment of the incumbent officer, at which time, under the very wording of Sec. 12 of Art. 5 of the Constitution, his commission "shall expire."

The authorities cited were used because of their apparent persuasive force in cases relating to prospective appointments but certainly nothing that was said in the opinion was ever meant to convey the impression that the Constitution of this State authorized the Governor to make prospective appointments to fill vacancies in any other cases save those relating to offices that were filled by recess appointments under Sec. 12 of Art. 5.

### On Rehearing.

MOISE, Justice.

On joint motion of appellant and appellee, through their respective counsel, and suggesting to the court that appellant has recognized appellee's title to, and has surrendered to appellee possession of, the office in suit:

It Is Ordered that the petition for rehearing filed herein by appellee on November 24, 1952, be and it is hereby dismissed.