613 So.2d 185 (1992)
M. Melvin MURRILL, M.D., John J. Hainkel, Jr., Francis E. "Hank" Lauricella, Garey J. Forster, and Mitchell J. Landrieu
v.
Edwin W. EDWARDS, Governor of the State of Louisiana.
No. 92 CA 1758.
Court of Appeal of Louisiana, First Circuit.
December 21, 1992.
Writ Denied March 12, 1993.
*187 Mary Olive Pierson, Baton Rouge, for plaintiff-appellant 1st M. Melvin Murrill, M.D., et al. and intervenor-appellant 2nd Sidney Duplessis, Mickey LaBorde, Julius McLaurin, Donald R. Mintz, Cynthia G. Montgomery, Antoinette Simmons.
Albert I. Donovan, Jr., Charles William Roberts, Baton Rouge, for defendant-appellee Governor Edwin W. Edwards.
Before LOTTINGER, C.J., and CRAIN and FOIL, JJ.
LOTTINGER, Chief Judge.
The issue in this appeal is the constitutional authority of the Governor of the State of Louisiana to make or not make certain appointments.
This is a mandamus proceeding instituted by M. Melvin Murrill, M.D., and the Honorables John J. Hainkel, Jr., Francis E. "Hank" Lauricella, Garey J. Forster, and *188 Mitchell J. Landrieu[1] against the Honorable Edwin W. Edwards, Governor of the State of Louisiana, seeking to compel Governor Edwards to submit the names of certain appointees to the Louisiana State Senate for confirmation, to fill a vacancy on the Louisiana Health Care Authority Governing Board (Governing Board)[2] by selecting a name from a list submitted to him, and to appoint members to local boards. From a judgment maintaining the peremptory exception raising the objection of no right of action as to the legislator-plaintiffs, ordering the governor to fill a vacancy on the Governing Board[3], refusing to order the governor to submit the names of certain appointees to the Senate for confirmation, and refusing to order the governor to appoint members to local boards, plaintiffs have appealed.

FACTS
On October 3, 1991, between the adjournment of the 1991 Regular Session of the Louisiana Legislature and the convening of the 1992 Regular Session of the Louisiana Legislature, April 20, 1992, Governor "Buddy" Roemer appointed nine at-large members to the Governing Board. These nine appointees were issued commissions, and all but one took their oaths of office. On January 13, 1992, Edwin W. Edwards was sworn in as Governor of the State of Louisiana succeeding Governor "Buddy" Roemer.
On February 13, 1992, Ronald V. Burns, Sr., Governor Roemer's appointee to the Governing Board, resigned as an at-large member. The Governing Board submitted the names of three individuals to Governor Edwards for appointment to fill the vacancy created by the Burns resignation. Governor Edwards had not as of the filing of the instant suit filled the vacancy.
On April 13, 1992, Governor Edwards appointed Cynthia Dupree[4] to the Governing Board, and her name was submitted to the Senate for confirmation during the 1992 Regular Session of the Louisiana Legislature. However, as of the date of the filing of the instant suit, June 2, 1992, Governor Edwards had not submitted the names of any other appointees to the Governing Board to the Senate for confirmation, and in particular, Governor Edwards had not submitted the names of Governor Roemer's appointees to the Governing Board to the Senate for confirmation. The trial court judgment was signed and rendered on June 16, 1992, and the 1992 Regular Session of the Louisiana Legislature adjourned sine die on June 22, 1992.

ASSIGNMENTS OF ERROR
In appealing plaintiffs contend the trial court erred:
1) In granting the oral exception of no right of action filed by the defendant to the petition of Senators Hainkel and Lauricella and Representatives Forster and Landrieu.
2) In denying the Request for Writ of Mandamus ordering the governor to submit the names of the Governing Board appointees to the Senate for confirmation.
3) In denying the Request for Writ of Mandamus ordering the governor to appoint the nine local boards of the Louisiana Health Care Authority from among the nominations which had been submitted to the Governor's office for selection and appointment.

*189 RIGHT OF ACTION
The trial court sustained the peremptory exception raising the objection of no right of action "filed" by the defendant as to the legislator-plaintiffs although the exception was not in writing. All pleadings must be in writing. La.Code Civ.P. art. 852. Thus, an oral exception is not allowed. However, La.Code Civ.P. art. 927 allows "either the trial or appellate court on its own motion" to notice the objection of no right of action. Therefore, even though the no right of action objection was not properly raised by defendant, it was proper for the trial court to address same, and it is properly before this court.
In order to have standing to bring a suit requesting the issuance of a writ of mandamus to a public official, a plaintiff must show some special interest separate and distinct from that of the public at large. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354 (La.1991) and League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441 (La.1980). The legislators argue that since they are members of the body that adopted the statute at issue, they have an interest which is separate and distinct from the interest of the public at-large. We disagree.
In a tripartite system of government the powers of the three branches are separate: the legislature enacts laws, the executive executes laws, and the judiciary applies laws. To grant legislators standing to compel the executive to execute laws would disrupt the delicate separation and balance of power. Not only would the legislative branch take power away from the executive, the judicial branch would be called upon to redistribute the power. The judiciary is an unsuitable arbitrator of conflicts which are best resolved in the political arena. Thus, we find that the legislators, individually, are in the same position with respect to standing as an ordinary taxpayer and, as such, cannot show an interest distinct from the public at-large.
The legislators argue, in the alternative, that if they do not have standing to compel the executive to act through a writ of mandamus, they do have standing, to prevent the executive from performing an act which is unlawful through the issuance of an injunction. While it is true that a much broader group of plaintiffs (any taxpayer) may have standing to prevent public officials from performing acts which violate the law, these legislators do not seek to enjoin an unlawful act, they seek to compel the performance of an act. If we were to accept the legislators' contention, that they seek to enjoin Governor Edwards from obstructing the transmission of the names of appointees to the Senate for confirmation, the distinction between an injunction and a mandamus would become nonexistent. That is, all mandamus plaintiffs would have standing as long as they characterized their claims in prohibitory language. For example, an individual who desires an appointment could file suit seeking to enjoin the governor from failing to appoint him or her to the desired position. Such a rule would take all meaning out of the distinction between a mandamus plaintiff and an injunction plaintiff. Thus, the objection of no right of action was properly maintained as to the legislator-plaintiffs.
We now move to the issues relative to the remaining plaintiffs.

GUBERNATORIAL APPOINTMENT POWERS
We note at the outset that the facts and issues presented by this appeal are limited to those which occurred after the adjournment sine die of the 1991 Regular Session of the Louisiana Legislature and before the date of the filing of this petition, June 2, 1992. However, we are aware and take notice that the 1992 Regular Session of the Louisiana Legislature adjourned sine die on June 22, 1992. Lastly, we are also aware through oral argument that other than the names of Cynthia Dupree and Penelope R. Brazile[5], no other names were *190 submitted to the Senate for confirmation as members of the Governing Board.
From the earliest Louisiana constitution in 1812, the governor of Louisiana has had constitutionally vested appointment powers. The appointment powers language has evolved over the years through the various constitutions[6] until the language found in the current constitution.
The appointment powers of the governor are found in Article 4, Section 5(H) of the Louisiana Constitution, which provides:
(1) The governor shall appoint, subject to confirmation by the Senate, the head of each department in the executive branch whose election or appointment is not provided by this constitution and the members of each board and commission in the executive branch whose election or appointment is not provided for by this constitution or by law. (emphasis added)
(2) Should the legislature be in regular session, the governor shall submit for confirmation by the Senate the name of an appointee within forty-eight hours after the appointment is made. Failure of the Senate to confirm the appointment, prior to the end of the session, shall constitute a rejection.
(3) If the legislature is not in regular session, the governor may make interim appointments, which shall expire at the end of the next regular session, unless submitted to and confirmed by the Senate during that session. (emphasis added)
(4) A person not confirmed by the Senate shall not be appointed to the same office during any recess of the legislature.
Except for fact specific cases concerning gubernatorial appointment powers, we find no jurisprudence providing a general discussion of the appointment powers of the governor. Therefore, some general observations are necessary.
It is necessary to discuss and define the interrelationship between the four paragraphs of article 4, section 5(H) to determine a clearer understanding and meaning of the appointment powers of the governor.
Paragraph (1) contains the basic reservation of gubernatorial appointment powers. We do not interpret the language "[t]he governor shall appoint" to means that the governor is mandated to appoint, but rather we conclude it means that as between the three branches of government, except as provided by the constitution or by law, the appointment powers belong exclusively to the governor subject to Senate confirmation. The constitution or the legislature may provide that the appointment is to be made by a person or entity other than the governor or a combination thereof. We further conclude that the constitution or legislature may dispense with the confirmation requirement of gubernatorial appointees. Compare U.S. Const. art. II, § 2, cl. 2.
Having concluded the above, there are limits to the power of the legislature to impinge upon the constitutional authority of the governor to use discretion in making appointments. Any attempt to restrict the appointment powers of the governor by the legislature would amount to an attempt to exercise powers reserved to the governor by article 4, section 5(H). The authority of the legislature to vest some entity other than the governor with appointment powers does not imply that the legislature can impinge on the appointment powers by placing restrictions thereon short of completely divesting the governor of the appointment powers. We do not, however, view as an impingement on the appointment powers of the governor the authority of the legislature to require that the membership of a certain board or commission possess certain qualifications or be representative of certain areas of society, or that certain representative groups in society submit nominees to the governor for appointment. However, any requirement that attempts to limit the discretion *191 of the governor to reject the nominees submitted would amount to an impingement on the appointment powers.
Whereas paragraph (1) deals with the appointment powers in general, paragraph (2) is limited exclusively to appointments made during a regular session. Within forty-eight hours after the appointment is made such appointments shall be submitted to the Senate for confirmation. Any failure of the Senate to confirm constitutes a rejection of the appointment.
Likewise, paragraph (3) is limited to interim appointments, that is appointments made when the legislature is not in regular session. The governor is not required to make interim appointments, but "may make interim appointments." Thus, it would seem clear that the governor has the discretion or freedom to make or not to make interim appointments. "Unless submitted" to the Senate at the next regular session for confirmation, the appointments shall expire. When the constitution uses the terms "unless submitted," we conclude the governor has the discretion as to whether to submit the names of interim appointees to the Senate for confirmation or to simply allow the appointments to expire. If the delegates to the constitutional convention had intended otherwise, such as the language requiring submission found in paragraph (2), the delegates could have very easily required submission at the next regular session after the interim appointments were made.
Lastly, paragraph (4) clearly provides that a person not confirmed by the Senate cannot be appointed to the same office during any recess of the legislature.

MANDAMUS
In this proceeding, plaintiffs are seeking a writ of mandamus. Basic to the relief sought is the availability of a writ of mandamus compelling the governor to act. La. Code Civ.P. arts. 3861-3866 contain the statutory rules governing mandamus. Article 3863 provides that:
A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor.
In order for the plaintiffs to obtain a writ of mandamus, they must establish that the performance sought is a ministerial duty. The word ministerial in the current context is used to differentiate between tasks that are mandatory and those which are in some way discretionary.

APPOINTMENTS TO GOVERNING BOARD
Plaintiffs contend the trial judge erred in denying the request for a writ of mandamus ordering the governor to submit the names of the Governing Board appointees to the Senate for confirmation. The basis of plaintiffs' argument is that since La.R.S. 46:704 provides for a method by which a list of names is submitted to the governor for the selection therefrom of appointees, that the Governing Board falls within the constitutional exception of article 4, section 5(H)(1) "provided for by law," thus article 4, section 5(H) is inapplicable. Plaintiffs next argue that since article 4, section 5(H) does not apply, the appointments did not expire at the adjournment of the next regular session because La.R.S. 46:704 though it requires Senate confirmation, does not expressly provide that if not confirmed the appointments expire. Plaintiffs further argue that La.R.S. 46:704 creates a ministerial duty on the part of the governor to submit the names of the appointees to the Senate for confirmation. And last, though novelly, it is argued that by failing to submit the names of the appointees to the Senate for confirmation, the governor is attempting to remove from office individuals appointed to an office with a fixed term, all in violation of article 4, section 5(I).

I
We do not find that La.R.S. 46:701-710, Louisiana Health Care Authority, is a statutory scheme providing for the appointment of members of a board otherwise provided by law as contemplated by article 4, section 5(H)(1). The "provided by law" clause is a constitutional recognition *192 that the legislature can create boards and agencies whose members and heads are appointed by some authority other than the governor.[7] Inasmuch as this statutory scheme provides for gubernatorial appointment, as well as Senate confirmation, article 4, section 5(H) is applicable. Thus, the power and discretion to appoint rests in the governor.
Once we conclude that article 4, section 5(H) is applicable to these appointments, we must determine under the facts of this case whether Governor Edwards was required to submit the names of the Governor Roemer's appointees to the Senate for confirmation during the 1992 Regular Session of the Louisiana Legislature. We conclude that he was not required to do so.
Governor Roemer's appointments were interim appointments. It does not make any difference whether these appointments were made by Governor Roemer or by Governor Edwards, the significance is that these were interim appointments. Inasmuch as the governor has the discretion whether to make interim appointments and whether to submit them to the Senate for confirmation, we find no constitutional mandate that these interim appointments be submitted to the Senate for confirmation.[8] Once the legislature adjourned sine die, these appointments expired pursuant to article 4, section 5(H)(3).
We also conclude that the inclusion of Senate confirmation in La.R.S. 46:706 without at the same time the inclusion of *193 expiration of the appointment language as argued by plaintiffs is of no moment. Even assuming arguendo the legislature could waive the expiration provision of paragraph (3) without at the same time waiving confirmation, the failure of the legislature to specifically provide in La.R.S. 46:706 for expiration of the appointments does not in our opinion imply any intent on the part of the legislature to waive that provision of the constitution.
Inasmuch as we have concluded that the governor has the discretion to appoint members to the Governing Board, and it is not a ministerial duty, mandamus is not a proper remedy.

II
Lastly we conclude that plaintiffs have misconstrued article 4, section 5(I) when they argue that the governor is attempting to remove from office individuals appointed to an office with a fixed term by failing to submit their names for Senate confirmation.
Plaintiffs argue that Alleman v. Dufresne, 17 So.2d 70 (La.App.Orleans 1944), stands for the proposition that once the governor makes an appointment his function is complete. In Alleman, two individuals were appointed by the governor to fill one vacancy on a parish school board. The governor appointed Alleman on December 29, 1942, and caused a commission to be delivered to him on that same date. On January 4, 1943, Alleman took an oath of office, but before the oath was delivered to the Secretary of State and the Clerk of Court of St. Charles Parish for recordation, the governor issued an executive order rescinding the appointment, and simultaneously, appointed Dufresne. The court held that the appointment of Dufresne was an absolute nullity as "the appointment of the Governor was completed when he issued the commission and since plaintiff has qualified for the office within the time prescribed by law, the Governor was without power or authority to rescind his appointment...." Id. at 76.
In the present case, the appointment of the LHCA governing board was not complete upon the issuance of commissions or oaths of office because the appointees must be confirmed by the Senate. La.R.S. 46:701. Thus, Alleman is not controlling.
Plaintiffs argue that Macon v. Costa, 437 So.2d 806 (La.1983), and art. 4, sec. 5(I) prohibits the governor from removing the LHCA board members from office. In Macon, the court was faced with the following conflict of statutes: the statute creating state-wide levee districts allowed the governor to replace levee board members at will, while a later enacted statute granted the members of the Orleans Levee Board a term of four years. The court found the statutes in irreconcilable conflict and gave effect to the later enacted statute. Thus, the court found that the governor could not remove a member of the Orleans Levee Board before the term expired. 437 So.2d at 813.
It is undisputed that the constitution prohibits the governor from removing an appointee whose appointment is for a fixed term. With respect to the present case this line of argument begs the essential question which is whether the appointments were actually made. The appointment in Macon was valid without Senate confirmation. Macon 437 So.2d at 813, n. 15. In the present case, Senate confirmation was required before the appointment became effective and subject to the prohibition of removal contained in art. 4, sec. 5(I). We find this distinction dispositive.
Article 4, section 5(I) is very clear when it provides that "[t]he governor may remove from office a person he appoints, except a person appointed for a term fixed by this constitution or by law." What plaintiffs fail to realize is that article 4, section 5(I) must be read in pari materia with article 4, section 5(H)(3). If the governor has the discretion to make interim appointments and the discretion whether to submit for confirmation, with the result that the interim appointment shall expire "unless submitted to and confirmed by the Senate," then obviously section (I) could not be referring to interim appointments that were never submitted for confirmation. Otherwise, there are two constitutional *194 provisions in conflict. But, we conclude there is no conflict. Therefore, the governor was doing nothing more than he is authorized to do by article 4, section 5(H)(3).

APPOINTMENTS TO LOCAL BOARDS
Assuming arguendo that these plaintiffs have standing on this issue, plaintiffs contend that the governor should be compelled to select and appoint members of the nine (9) local boards from a list of nominations submitted by the regional nominating council. The parties to this dispute have stipulated that the nominations were submitted to Governor Roemer on December 11, 1991, and to date no appointments have been made.
La.R.S. 46:705 in part provides the following with respect to the appointment of local boards:
B. The local boards shall be composed of seven voting members ... appointed by the governor, subject to Senate confirmation, from a list of two names for each position submitted by the regional nominating council.
Plaintiffs argue that the appointment of board members is a ministerial duty which the governor can be compelled to perform through the issuance of a writ of mandamus. In support of this contention, plaintiffs cite Frame v. Yenni, 347 So.2d 309 (La.App. 4th Cir.1977). In Frame, the plaintiff filed a mandamus action against the Mayor of Kenner seeking to compel him to appoint as fire chief one of two persons certified by the Kenner Municipal Fire & Police Civil Service Board. The trial court granted the mandamus, and the court of appeal affirmed. The Fourth Circuit found that the statute under which the appointment was to be made required the mayor to appoint one of the persons certified by the civil service board. No discretion was given to the mayor, other than to choose from the list of persons certified.
In the present case, La.R.S. 46:705 does not mandate that the governor choose from a list of certified civil servants but requires the governor to choose from among nominees. The nominees to the local boards are not equivalent to certified civil servants, they have passed no test nor proven their qualification, they have simply been nominated by the regional nominating council. The governor is not compelled to appoint an unqualified person to a state board or commission. If, in the governor's discretion, no one on the list of nominations by the council is qualified, the governor is allowed to reject the list and request another. In Frame, the Mayor of Kenner had no such discretion, the candidates for the position of fire chief were qualified as evidenced by their passing a certification exam. Furthermore, it is inappropriate to compare the amount of discretion exercised by a mayor acting pursuant to a home rule charter or act of the legislature authorizing municipal government and the governor of the state acting under authority reserved to him in the constitution.
We hold that the governor cannot be compelled, by mandamus, to appoint members to the local boards. The act of appointing is a discretionary decision not a mandatory, ministerial duty. As such, no mandamus will be issued.

DECREE
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiffs-appellants' costs.
AFFIRMED.
FOIL, J., concurs in the result.
CRAIN, Judge, concurring.
I agree with the result reached in this case. I do not necessarily subscribe to the broader statements with reference to the inability of the legislature to impose restraints and standards on the Governor's appointment powers. Nor am I willing to take such a narrow view of standing that in effect no one can require the Governor to take action to fill vacancies to positions required by law to be filled if the Governor decides to keep them vacant.
NOTES
[1] The Honorables John J. Hainkel, Jr. and Francis E. "Hank" Lauricella are members of the Louisiana Senate, and the Honorables Garey J. Forster and Mitchell J. Landrieu are members of the Louisiana House of Representatives. Additionally, Sidney Duplessis, Mickey LaBorde, Julius McLaurin, Donald R. Mintz, Cynthia G. Montgomery, M.D., and Antoinette Simmons, Governor Roemer's appointees to the Governing Board, intervened as party plaintiffs.
[2] La.R.S. 46:701-710.
[3] That portion of the trial court judgment ordering the governor to fill a vacancy on the Governing Board was neither appealed not was an answer to the appeal filed by the defendant. Thus, that issue is not before this court.
[4] Ms. Dupree was an original appointee of Governor Roemer to the Governing Board.
[5] Ms. Penelope R. Brazile was appointed to the Governing Board and her name submitted to the Senate for confirmation by Governor Edwards subsequent to the institution of this suit.
[6] Gubernatorial appointment powers were provided for in the Louisiana Constitutions of 1812 in article 3, §§ 9 & 10, of 1845 in articles 50 & 51, of 1852 in articles 47 & 48, of 1864 in articles 54 & 55, of 1868 in articles 60 & 61, of 1879 in articles 68 & 69, of 1898 in articles 71 & 72, of 1913 in articles 71 & 72, and of 1921 in article 5, §§ 11 & 12.
[7] Plaintiffs cite Chappuis v. Reggie, 222 La. 35, 62 So.2d 92 (1952), as authority for the proposition that when the legislature provides, by statute, a method of appointment, the appointment is provided for by law and thus excepted from the constitutional appointment provisions. In Chappuis, the plaintiff claimed the office of Judge of the Crowley City Court by virtue of being appointed by the governor and confirmed by the Senate. The court found that the office of Judge of the Crowley City Court was created by the legislature and, that the constitution granted to the legislature the right to provide the mode of filling all offices created by it. La. Const. of 1921, art. 5, §§ 11 & 12. In finding that the legislature had provided for the mode of filling the office, the Chappuis court relied on La.R.S. 42:373, which provided that a special election should be held to fill a vacancy if an office is, by law, made elective by the people and the unexpired term is greater than one year, as was the case in Chappuis. 62 So.2d at 95. Chappuis, unlike the present case, dealt with appointments to fill vacancies in elected offices. Furthermore, the legislation applicable in Chappuis specifically provided that a special election was required to fill vacancies.
[8] In State ex rel Saint v. Dowling, 167 La. 907, 120 So. 593 (1928), the Louisiana Supreme Court held that the failure of the governor to submit a recess appointee's name to the Senate for confirmation during a special session did not constitute a rejection. Id. 120 So. at 601. This holding implicitly recognizes the governor's power to reject an appointee by failing to submit the appointee's name for confirmation during the next regular session of the legislature. The Dowling court explicitly stated this principal as follows: "the appointive power is vested exclusively in the Governor by the Constitution, and therefore it is left to him to take the initial step in having recess appointees confirmed by the Senate." Id. at 601.

In State ex rel La Nasa v. Hickey, 222 La. 17, 62 So.2d 86 (1952), the court again dealt with the issue of recess appointees (the equivalent of the 1974 Constitution interim appointees). Governor Long, at a time when the Senate was in recess, appointed Hickey as an assessor to fill the vacancy of a deceased incumbent. By the time the Senate was again in session a new governor had been sworn in, Robert F. Kennon. Governor Kennon then appointed La Nasa as assessor, and La Nasa was confirmed by the Senate. Hickey refused to surrender the office, and La Nasa brought suit claiming intrusion in office. The court held that Hickey's term expired upon the adjournment of the next legislative session. Id. 62 So.2d at 90. In discussing the power of the Governor the court stated;
Governor Long had the indisputable power to appoint Hickey to the office he did on October 17, 1951 without the advice and consent of the Senate and, under the commission which he granted to him, Hickey became the Assessor for a temporary term, that is, until the end of the Senate session next following his appointment. For either Governor Long or Governor Kennon, had either cared to do so, to continue Hickey in office for the remainder of the unexpired term, it would have been necessary for him to nominate him and have his nomination confirmed by the Senate at its session next following the temporary appointment made by Governor Long. Id. at 88.
We find the fact pattern in this case to be virtually identical to the case at hand. Had Governor Edwards cared to do so he could have submitted the names of Governor Roemer's appointees to the Senate for confirmation. By the rule established in Hickey, Governor Edwards, clearly, was under no obligation to do so.