821 So.2d 623 (2002)
SAVANT INSURANCE SERVICES, INC. and Savant Insurance Company, Plaintiffs-Appellees
v.
CENTRAL OIL AND SUPPLY CORPORATION, Defendant-Appellant.
No. 36,095-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 2002.
*625 Donald L. Kneipp, Monroe, for Appellant.
Richard P. Ieyoub, Attorney General, Arlene D. Knighten, Assistant Attorney General, Kirk A. Bergeron, Baton Rouge, for Appellees.
Before BROWN, WILLIAMS & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from a judgment of the trial court in favor of Plaintiffs, Savant Insurance Services and Savant Insurance Company (collectively referred to herein as "Savant"), and against Defendant, Central Oil and Supply Corporation ("COS"), in the amount of $43,460.24, together with legal interest, representing unpaid premiums on workers' compensation insurance policies. COS appeals, asserting four assignments of error, and Savant has answered the appeal challenging the amount awarded and the failure to award attorney fees. For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL BACKGROUND
COS owns and operates gas service stations and convenience stores. This dispute primarily concerns the classification of COS employees for purposes of computing the premiums due under certain workers' compensation insurance policies procured *626 for COS through agent Thomas, Farr & Reeves Agency, Inc. ("Thomas & Farr"). Savant filed suit on April 22, 1997, for the following alleged unpaid premium amounts: (1) $46,744 for policy period July 15, 1991, to July 15, 1992, and (2) $48,967 for policy period July 16, 1992, to December 31, 1992. The alleged unpaid premiums resulted from a re-classification of COS employees by Savant as Code 8061, "convenience store," which carries a higher premium rate, rather than Code 8381, "gas station/self serve."
COS's application for the policies at issue contained an estimated payroll figure and COS's classification of its employees as "gas station/self serve" for premium computation. COS paid an estimated premium based on the above representations; however, the actual premiums were subject to adjustment under the following provisions of the policy:
D. Final Premium
The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy....
* * *
G. Audit
You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.
Savant assigned a comptroller, Ms. Donna Rone, to conduct an audit of COS, pursuant to provision "G" above, in order to determine whether the estimated premium paid by COS should be adjusted in accordance with provision "D" above. The parties dispute what documents and information Ms. Rone actually reviewed and considered in drawing her conclusions that COS had substantially underestimated its payroll for each of the policy periods and had incorrectly classified many of its employees. In any event, as a result of her audit and re-classification of COS employees, Ms. Rone sent an invoice to COS for unpaid excess premiums. COS objected to the amounts of the requested premiums and appealed the audit findings to the Louisiana Insurance Rating Commission ("the Commission"). While the matter was pending before the Commission, in July 1994, Savant filed suit seeking a judgment for the unpaid premiums.[1] COS filed an Exception of Prematurity based on La. R.S. 22:1412(B), which provides redress before the Commission to a party affected by the action of a workers' compensation insurer. The trial court denied the exception; however, this court *627 granted a supervisory writ and reversed, dismissing the suit without prejudice on our finding that the administrative remedy available under 1412(B) had not been exhausted prior to filing suit.
The Commission had convened hearings in October and November 1994, with the major issue being the classification of COS employees. The policies at issue covered 18 COS gas stations, the employees of which were classified as "gas station/self serve" when the premiums were originally quoted. As previously stated, Savant conducted an audit and ultimately classified all of the employees as "convenience store" which carries a higher premium. In November 1994, the Commission entered a ruling and, because the parties differ drastically in their interpretations of the ruling, it is reproduced, in pertinent part, as follows:
Mr. Maxwell stated that in all fairness to both parties he would suggest that Code 8061 be used for self-service gasoline station location when the sale of deli and convenience store items exceed 10%, and that Code 8381 be used for self-service gasoline station location[sic] when the sale of deli and convenience store items do not meet the 10% criteria.....
Therefore, Mr. Maxwell made the following motion:
1. That Code 8061Store: Grocery Convenience-Retail be applied to all employees at all locations of Central Oil and Supply Corporation having combination self service gasoline station and convenience store/deli operations, provided the sale of deli and convenience store items exceeds 10 percent of the total annual receipts for the location;
2. That Classification Code 8061 apply to the July 1, 1991 and July 1, 1992 policies for only the portion of time each location was actually operating as a combination self service and deli/convenience store during those policy periods;
3. That Code 8381Gasoline Station-Retail Self Service be applied to all self service gasoline station and deli/convenience store locations not meeting the 10% criteria of Item 1 above....
The motion passed and became the ruling of the Commission. Neither COS nor Savant applied for a rehearing of the ruling within the pertinent time delays.
On January 13, 1995, COS, however, in accordance with 1214(B), petitioned the 19th Judicial District Court for judicial review of the Commission's decision, but subsequently moved for dismissal of that petition because the Commission had granted an out-of-time rehearing to further review the matter. COS's petition for judicial review was, therefore, dismissed by the district court. On June 2, 1995, however, Savant filed in the district court a Petition for Writ of Mandamus and, Alternatively, Injunctive Relief, as amended and supplemented by a Supplemental Petition for Writ of Mandamus, Injunctive Relief, Declaratory Relief, Nullity of Amended Judgment and in the Alternative, Application for New Trial seeking to have the Commission's ruling declared final and non-appealable. The district court rendered judgment in favor of Savant, declaring that the decision of the Commission had become final and was no longer subject to appeal, review or modification either by the district court or the Commission. All proceedings before the Commission were stayed. The ruling of the district court was affirmed by the first circuit and the supreme court denied writs. See Central Oil and Supply Corporation v. Savant Insurance Services, Inc., 96-0299 (La. App. 1st Cir.12/20/96), 684 So.2d 1171, *628 writ denied, 97-0366 (La.3/21/97), 691 So.2d 92.
According to Savant, the findings of the Commission approved of Ms. Rone's audit procedures and it maintained that COS was obligated to it in the amounts set forth in its original invoice and demand letters. COS disagreed with Savant's interpretation of the Commission ruling and did not pay the invoices because, according to COS, Savant was required to recalculate the excess premiums owed utilizing the ten percent formula as instructed by the Commission. As a result of the stalemate, Savant filed the present suit (which is identical to the July 1994 suit and seeks the same amounts of premiums) in the Fourth Judicial District Court in April 1997.
On June 13, 1997, COS filed an Answer denying the allegations of the Petition, an Exception of Prematurity and a Third Party Demand against Thomas & Farr (the third party demand was subsequently voluntarily dismissed). The basis for the Exception of Prematurity in the present suit was the same as the prior Exception of Prematurity in the July 1994 suit, i.e., COS alleged that the administrative remedy provided by 1214(B) had not been exhausted because Savant had not recalculated the premiums in accordance with the ten percent formula set forth in the Commission's ruling. Before the current Exception of Prematurity was heard, Savant filed an Amended Petition seeking unpaid premiums for the policy period January 1, 1993, to December 31, 1993, but did not allege a specific amount owed. COS also objected to this claim as premature because Savant had failed to audit the 1993 policy period within the three years provided in the policy and because the 1993 policy period had never been raised before the Commission. The trial court denied the Exception of Prematurity, stating that the subject matter had been decided (by the Commission's November ruling) and the "accountants could do the figures." A second supervisory writ to this court was denied as untimely.
Trial was had on June 25 and 26, 2001, and the trial court ultimately accepted the testimony of COS accountant, Gary Booth, regarding the premiums due after application of the Commission's instructions and entered judgment in favor of Savant, but utilizing Mr. Booth's figures as follows: (1) policy period of July 15, 1991, to July 15, 1992 = $16,445.49; (2) policy period of July 15, 1992, to December 31, 1992 = $36,746.60; (3) policy period of January 1, 1993, to December 31, 1993 = a credit owed by Savant to COS in the amount of $9,731.85 for a total due Savant of $43,460.24. This appeal ensued.

DISCUSSION

Prematurity
COS's first assignment of error challenges the trial court's denial of its Exception of Prematurity. As previously stated, La. R.S. 22:1412(B) establishes a right of appeal to the Commission for a party aggrieved by the action of a workers' compensation insurer. COS argues that the propriety of the application of the classification guidelines for its employees in determining the premiums owed is a matter which must first be reviewed by the Commission before the issue can be pursued in district court. We agree, but, for reasons expressed below, will not dismiss the suit on appeal.
As a threshold matter, Savant argues that COS waived its right to assert this exception because it was not filed prior to the answer. La. C.C.P. art. 928, however, expressly states that the dilatory exception "shall be pleaded prior to or in the answer." (Emphasis added.) COS's exception was, therefore, properly brought before *629 the trial court. We now turn to the merits of the ruling on the exception.
"Prematurity" contemplates that the action taken by the petitioner occurs prior to some procedure or assigned time; it is usually utilized in cases wherein the law or a contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action. La. C.C.P. art. 926(1); Polk v. State, Through Department of Transportation and Development, 538 So.2d 239 (La.1989). When an exception raising the objection of prematurity is filed, the exceptor has the initial burden of showing that an administrative remedy was available by reason of which the judicial action was premature. Steeg v. Lawyers Title Ins. Corp., 329 So.2d 719 (La.1976). Once the existence of an administrative remedy is established, then the burden shifts to the party opposing the exception to show that the administrative remedies have been exhausted. Jones v. Crow, 633 So.2d 247 (La.App. 1st Cir.1993).
Generally, a person aggrieved by a state agency must exhaust all administrative remedies provided by that agency before being entitled to judicial review. The rationale of this requirement is that disputes pertaining to matters of agency regulation and expertise should ordinarily be first addressed by the administrative tribunals which the Legislature created to decide such issues. Polk v. State, Through Department of Transportation and Development, supra; citing Steeg v. Lawyers Title Ins. Corp., supra.
There are several interesting aspects of the arguments on this issue in the case sub judice. First, Savant argues that the exception is based on a false premise that a new audit was ordered by the Commission; Savant submits that the Commission's ruling "adopted and approved" Ms. Rone's audit findings and is, therefore, res judicata on this issue. The implication is that no further Commission involvement is necessary or required. We are at a loss to understand this interpretation of the Commission's ruling. The ruling does not even mention Ms. Rone's audit findings, nor does it contain any specific employee classifications or premium calculations by either party. The ruling very clearly sets forth a formula by which the classifications are to be made for purposes of arriving at a premium due for each COS location. The only logical interpretation of the Commission's ruling is that the prescribed formula must now be applied by Savant in order to accurately determine the premiums owed by COS.
While we recognize and agree that the Commission's ruling establishing the formula is res judicata as to the formula, the application of that formula, i.e., the classification of employees for purposes of premium calculation, is a separate and distinct action of the insurer which is subject to review by the Commission should the insured have reason to seek such review. Specifically, La. R.S. 22:1412(B) requires the Commission to provide a reasonable means whereby an aggrieved party may be heard "to review the manner in which such rating system has been applied in connection with the insurance afforded him." (Emphasis added.) In the case sub judice, the Commission never addressed "the manner in which" its ten percent formula was applied to COS's locations by Savant. We believe, therefore, that the present action was prematurely brought before the trial court.
Second, however, we note that it would have been COS, as the aggrieved party, which would have filed an appeal with the Commission to review the application of the formula, or Savant's failure to apply *630 the formula, which COS did not do. At that point, we note that the proper, and only, forum in which Savant could attempt to collect the unpaid premiums was the district court. COS submits that there was an administrative proceeding in progress; but, in reality, the appeal before the Commission, which culminated in the promulgation of the formula, was final. Any further review by the Commission would have required the filing of a separate appeal. Although we disagree that there was a proceeding pending before the Commission at the time Savant filed suit, we believe that this issue is one better suited for the Commission and should have been addressed by way of a separate appeal to that body.
A third aspect of this issue which requires discussion specifically concerns the 1993 policy period. Classification for this policy period was never brought before the Commission as Savant's allegation seeking 1993 premiums was added to its petition by way of supplemental pleading. In addition, we note that Savant never audited COS with reference to this policy period. The parties argue over whether COS refused such audit, or if Savant ever requested to perform such an audit; but, regardless of the circumstances, our conclusion remains that the request for 1993 premiums was premature as well.
As noted earlier, however, we decline to dismiss this action on the basis of prematurity. Our review of the record convinces us that COS had a full opportunity to present evidence in support of its defense to the requested premiums and there is no contention that they have additional evidence to present on the matter. La. C.C.P. art. 2164 provides that an appellate court shall render any judgment which is just, legal and proper upon the record on appeal. Mindful of the principles of judicial economy, we will review the merits of this case. See State Farm Fire and Casualty Company v. Louisiana Insurance Rating Commission, 97-0368 (La. App. 1st Cir.4/8/98), 710 So.2d 819.

Proper Parties and No Right of Action
In its second assignment of error, COS argues that the trial court erred in proceeding with the trial because Savant had no right of action to seek collection of premiums under the policies at issue. The peremptory exception of no right of action can be raised by a litigant or noticed by the trial or appellate court on its own motion. La. C.C.P. art. 927(B).
Before reaching the bases for COS's objection as to Savant's right of action, or lack thereof, we must agree with Savant that COS failed to properly bring the issue before the trial court by not filing a written exception of no right of action. Pleadings in court must be filed in writing. La. C.C.P. art. 852; Murrill v. Edwards, 613 So.2d 185 (La.App. 1st Cir.1992), writ denied, 614 So.2d 65 (La.1993). Exceptions are pleadings and must conform to La. C.C.P. arts. 853, 854 and 863 regarding the form and contents. La. C.C.P. art. 924. Thus, an oral exception is not allowed. Murrill v. Edwards, supra. COS orally objected to Savant's right of action during the testimony of William Starr, a Savant representative; however, no written motion was ever filed and there was no formal ruling by the trial court on the objection. La. C.C.P. art. 927, however, allows "either the trial court or appellate court on its own motion" to notice the exception. While it would, therefore, have been proper for the trial court to notice the objection, we do not find that the trial court did so. There is no statement by the trial court to that effect, nor, as previously stated, is there any express ruling on the issue of no right of action.
*631 Likewise, we decline to notice the exception of no right of action. A brief discussion of the law and facts explains our decision in this regard. The exception of no right of action challenges whether the plaintiff has an actual interest in bringing the action. Dance v. Louisiana State University Medical Center at Shreveport, 32,592 (La.App.2d Cir.12/10/99), 749 So.2d 870, writ denied, 00-0532 (La.3/31/00), 759 So.2d 76. The question raised by the exception is whether the particular plaintiff falls, as a matter of law, within the particular class to which the law grants a remedy for the particular harm alleged. La. C.C.P. art. 927(5); Ridgedell v. Succession of Kuyrkendall, 98-1224 (La. App. 1st Cir.5/19/99), 740 So.2d 173. COS argues that the policy covering the period of July 15, 1991, to July 15, 1992, was in the name of North American Indemnity Company ("North American") and the policies covering the remaining policy periods at issue in this case are in the name of Eagle Compensation and Reinsurance Company ("Eagle"); and, therefore, Savant is not a proper party plaintiff. Savant's petition contains allegations that Eagle assumed the policies of North American and, subsequently, changed its name to Savant Insurance Company. These allegations were denied by COS and no documentary evidence was introduced at trial in support of the allegations. This forms the basis of COS's exception. The record on appeal, however, contains sufficient evidence supporting Savant's right of action in this case; and, therefore, we find no further discussion of this issue necessary.[2]
COS advances a second argument in this assignment. Shortly before trial, Savant was placed in liquidation and, subsequently, rehabilitation. COS cites La. R.S. 22:735(A) in support of its contention that only the Commissioner of Insurance could have prosecuted the claims for unpaid premiums. Section 735(A) provides as follows:
The Commissioner of Insurance and his successors in office shall be vested with the title to all property, contracts, and rights of action by the insurer as of the date of the order directing rehabilitation or liquidation.
La. C.C.P. art. 807, however, is also pertinent and provides as follows:
When a party to an action transfers an interest in the subject matter thereof, the action shall be continued by or against such party, unless the court directs that the transferee be substituted for or joined with the transferor.
The effect of Section 735(A) is that the Commissioner step into the shoes of the insurer; however, under article 807, it is within the discretion of the trial court whether the parties to a pending suit shall be substituted. After being placed in rehabilitation, Savant continued in the suit as plaintiff and at no time did Savant, the Commissioner or COS move the trial court to have the Commissioner substituted as the plaintiff. We find no error in the suit proceeding with Savant as the party plaintiff. In this regard, we note that the appeal brief of Savant was filed by the receiver appointed by the Commissioner of Insurance, who subsequently moved this *632 court to substitute the receiver as party plaintiff. An order granting the substitution was signed by this court.
Having found no merit in COS's assignments of error concerning procedural issues, we now review the merits of the trial court's judgment.

Wholesale Re-classification of Employees
In its third assignment of error, COS argues that the trial court erred in finding that the policy allowed a wholesale re-classification of its employees for purposes of calculating the final premium. First, COS asserts that Thomas & Farr was acting as Savant's agent in providing the insurance to COS. According to COS, Thomas & Farr determined the appropriate classifications and computed the premiums during the application process. Through its agent, Savant accepted these classifications and premiums and are bound by those representations. The express language of the policy, however, is fatal to this argument. As previously quoted in this opinion, the audit provision clearly states that the premium shown in the Information Page is an estimate and that the final premium "will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications ... that lawfully apply... to the work covered by this policy." (Emphasis added.) Clearly, Savant had the right to review the classifications of COS employees and re-classify them in calculating the final premium.
Next, we find it clear that COS did owe premiums to Savant and we find no error in the trial court's acceptance of the figures of Mr. Booth in fashioning the award. COS argues in the alternative that, if this court finds no merit in its other assignments of error (previously discussed in this opinion,) the figures accepted by the trial court were correct. We agree. This discussion also resolves the first issue presented in Savant's answer to the appeal wherein Savant argues that the trial court's acceptance of Mr. Booth's figures is not supported by the evidence.
The record contains a plethora of evidence and argument over the testimony of Ms. Rone and Hardeman Cordell, the president of COS. The critical piece of evidence, however, is that Ms. Rone admitted in her deposition testimony that she did not utilize the actual sales figures in making her calculations and classifications; but, rather, she classified a location as Code 8061 if it had a deli and as Code 8381 if it did not. She further admitted, as did Mr. Starr, that the premium amounts sought by Savant were not revised after the Commission's ruling setting forth the ten percent formula for classification. Any figures, or premium amounts, advanced by Savant, therefore, were incorrect. Mr. Booth, on the other hand, testified that he reviewed the sales figures and appropriate data from the policy periods at issue and applied the ten percent formula dictated by the Commission and he provided the trial court with his calculations and results. We find no manifest error in the trial court's acceptance of Mr. Booth's figures. As a final note on this issue, recall that COS complains that the trial court considered the 1993 policy period because Savant failed to conduct an audit for that policy period. In accepting Mr. Booth's figures, we simply point out that COS actually received a refund in the form of a credit for that policy period.
Finally, Savant argues in its answer to the appeal that this is a suit on an open account and, therefore, it is entitled to attorney fees under La. R.S. 9:2781(A), which provides as follows:
A. When any person fails to pay an open account within thirty days after the *633 claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.
Without expressly deciding whether or not this suit for unpaid insurance premiums constitutes an open account, we simply note that, if applicable, this statute is penal in nature, must be strictly construed and its provisions fully complied with before a penalty award of attorney fees may be made. City of Bossier City v. Sims, 486 So.2d 1122 (La.App. 2d Cir.1986), citing Frank L. Beier Radio, Inc. v. Black Gold Marine, 449 So.2d 1014 (La.1984). Further, in order to recover attorney fees in an action on open account, the party seeking the attorney fees is required to produce evidence to show that the amount owed was correctly set forth in a demand letter and was supported by invoice(s). Id.
In the case sub judice, the invoices and subsequent demand letters sent to COS by Savant contained incorrect amounts owed. Since the demands were for amounts in excess of what the trial court determined to be due, Savant is not entitled to statutory attorney fees. See Hub Detectives, Inc. v. Martinez, 515 So.2d 663 (La.App. 3d Cir.1987).

CONCLUSION
For the reasons stated herein, the judgment of the trial court is affirmed. Costs are to be born equally by Appellants and Appellee.
AFFIRMED.
NOTES
[1] That suit was styled Savant Insurance Services, Inc., et al v. Central Oil and Supply, Inc., Civil Action No. 94-2409 (4th JDC).
[2] Our review encompasses the entire record on appeal. See Ridgedell v. Succession of Kuyrkendall, supra, wherein at the time the trial court ruled on an exception of no right of action, the record was devoid of the documents that determined the issue of right of action, but such documents were contained in the record on appeal and were considered by the appellate court. In the case sub judice, although not introduced at trial, the appellate record contains the documents which prove Eagle's assumption of the book of business of North American and Eagle's name change to Savant Insurance Company.